# 14-1389-cv

## United States Court of Appeals

*for the*

## Second Circuit

———————————

PATRICK TANASI, on behalf of himself and others similarly situated,

*Plaintiff-Appellee,*

— v. —

NEW ALLIANCE BANK, FIRST NIAGARA FINANCIAL GROUP, INC.,

*Defendants-Appellants.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## DEFENDANTS-APPELLANTS

HODGSON RUSS LLP
*Attorneys for Defendants-Appellants*
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 28(a)(1), Appellant First Niagara Financial Group, Inc., states:

1.     First Niagara Financial Group, Inc. ("First Niagara") is a bank holding company that is publicly traded on the NASDAQ exchange.  First Niagara is the parent of First Niagara Bank, N.A. (not a named defendant).

2.     First Niagara is the successor-in-interest of Defendant New Alliance Bank, having acquired it on April 15, 2011.

Respectfully submitted,

Dated: Buffalo, New York
August 15, 2014

**HODGSON RUSS LLP**
*Attorneys for Appellants New Alliance Bank
and First Niagara Financial Group, Inc.*
By: <u>/s/ Hugh M. Russ, III</u>
Hugh M. Russ, III
140 Pearl Street, Suite 100
Buffalo, New York 14202
716.856.4000
Email:  hruss@hodgsonruss.com

i

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ............................................................................ iv

STATEMENT OF JURISDICTION.....................................................................1

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW .............................2

STATEMENT OF THE CASE AND OF THE FACTS .........................................3

      A.    The Complaint ...................................................................................3

      B.    The Bank's Rule 68 Offer .................................................................4

      C.    The Issue of Subject Matter Jurisdiction Is Certified for Interlocutory Appeal...............................................................................................4

STANDARD OF REVIEW .................................................................................6

SUMMARY OF ARGUMENT ............................................................................6

ARGUMENT ..................................................................................................10

I.      Under Article III of the Constitution, Federal Courts Lack Subject Matter Jurisdiction over a Moot Claim .................................................................10

II.    In a Non-Class Action, an Unaccepted Offer of Complete Relief Moots the Plaintiff's Claims ...................................................................................11

III.   In a Putative Class Action, an Unaccepted Offer of Complete Relief Made Before a Class Certification Motion Is Filed Moots the Named Plaintiff's Individual and Class Claims ......................................................................12

      A.    *Genesis HealthCare* Abrogated the Reasoning of the Decisions on Which the District Court Relied in Finding Jurisdiction to Exist.......21

            1.    Summary of *Sosna* and Its Progeny .........................................21

2.    *Genesis HealthCare* Held that *Sosna* and Its Progeny Did Not Bar the Dismissal of an FLSA Collective Action Where the Defendant's Pre-Certification Rule 68 Offer Provided Complete Relief to the Named Plaintiff ....................................................26

B.    The Reasoning of *Genesis HealthCare* Also Applies in Rule 23 Class Actions.............................................................................33

1.    The "Fundamental Differences" Between the FLSA and Rule 23 Concern the Certification Process and Are Irrelevant in This Case ................................................................................33

2.    Numerous Courts Agree that *Genesis HealthCare* Applies in Rule 23 Class Actions ..............................................38

3.    The Histories of Rule 23 and Rule 68 Confirm that This Entire Action Should Be Dismissed as Moot ......................................42

4.    Dismissal Will Not Impair the Rights of the Putative Class Members..................................................................................44

5.    Public Policy Also Dictates that This Action Be Dismissed as Moot ......................................................................................46

IV.   Tanasi's Putative Class Action Should Be Dismissed as Moot Following the Entry of Judgment in Favor of Tanasi Individually in Accordance with the Bank's Rule 68 Offer.................................................................................49

A.    The Bank's Unaccepted Offer of Complete Relief Mooted Tanasi's Individual Claims ...............................................................................49

B.    Because His Individual Claims Are Moot, Tanasi Cannot Represent a Class .................................................................................................50

C.    The Putative Class Claims Are Also Moot ........................................51

D.    A Desire for Class Action Attorneys' Fees Does Not Create Article III Standing.............................................................................................53

CONCLUSION ..............................................................................................55

CERTIFICATE OF COMPLIANCE....................................................................57

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Abrams v. Interco, Inc.*,
  719 F.2d 23 (2d Cir. 1983) ..........................................................................12, 16

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227 (1937)........................................................................................51

*Aguilera v. Pirelli Armstrong Tire Corp.*,
  223 F.3d 1010 (9th Cir. 2000) .......................................................................45

*Am. Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974)........................................................................................45

*Ambalu v. Rosenblatt*,
  194 F.R.D. 451 (E.D.N.Y. 2000)....................................................11, 15, 16, 54

*American Express Co. v. Italian Colors Restaurant*,
  133 S. Ct. 2304 (2013)...............................................................................47, 48

*Bais Yaakov of Spring Valley v. ACT, Inc.*,
  No. 14-8005 (1st Cir. pet. for app. granted July 18, 2014) ...............................20

*Bank v. Spark Energy Holdings LLC*,
  No. 4:11-CV-4082, 2013 U.S. Dist. LEXIS 150733 (S.D. Tex. Oct. 18,
  2013) ............................................................................................................41

*Cabala v. Crowley*,
  736 F.3d 226 (2d Cir. 2013) ...........................................................................11

*Chen v. Allstate Ins. Co.*,
  No. 13-16816 (9th Cir., pet. for app. granted Sept. 10, 2013)............................20

*Christensen v. Kiewit-Murdock Invest. Corp.*,
  815 F.2d 206 (2d Cir. 1987),
  *cert. denied*, 485 U.S. 908 (1987)....................................................................44

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013).....................................................................................48

*Comer v. Cisneros*,
  37 F.3d 775 (2d Cir. 1994) ...............................................................12

*CompuCredit Corp. v. Greenwood*,
  132 S. Ct. 665 (2012)........................................................................44

*County of Riverside v. McLaughlin*,
  500 U.S. 44 (1991)..............................................................18, 24, 30

*Craftwood II, Inc. v. v. Tomy Int'l, Inc.*,
  No. SA CV 12-1710 DOC, 2013 WL 3756485
  (C.D. Cal. July 15, 2013) ..................................................................33

*Crown, Cork & Seal Co. v. Parker*,
  462 U.S. 345 (1983)...........................................................................45

*Damasco v. Clearwire Corp.*,
  662 F.3d 891 (7th Cir. 2011) ............................................13,  15, 36

*Delgado v. Collecto, Inc.*,
  No. 8:13-cv-2511, 2013 WL 6332748
  (M.D. Fla. Dec. 5, 2013)....................................................................40

*Devlin v. Scardelletti*,
  536 U.S. 1 ..........................................................................................36

*Deposit Guaranty Nat. Bank v. Roper*,
  445 U.S. 326 (1980).....................................................................*passim*

*Diamond v. Charles*,
  476 U.S. 54 (1986).............................................................................53

*Doyle v. Midland Credit Mgmt., Inc.*,
  722 F.3d 78 (2d Cir. 2013) ...............................................................11

*Eckert v. Equitable Life Assurance Soc. of the U.S.*,
  227 F.R.D. 60 (E.D.N.Y. 2005) .......................................................18

*Edge v. C. Tech Collections, Inc.*,
  203 F.R.D. 85 (E.D.N.Y. 2001).......................................................16

*Ford v. D.C. 37 Union Local 1549*,
  579 F.3d 187 (2d Cir. 2009) .............................................................10

*Fox v. Bd. of Trustees of State Univ. of N.Y.*,
　42 F.3d 135 (2d Cir. 1994) ................................................................10

*Franco v. Allied Interstate LLC*,
　No. 13 Civ. 4053, 2014 U.S. Dist. LEXIS 47077
　(S.D.N.Y. April 2, 2014) ...............................................16, 38, 39, 50

*Genesis HealthCare Corp. v. Symczyk*,
　133 S. Ct. 1523 (2013)..........................................................*passim*

*Gerstein v. Pugh*,
　420 U.S. 103 (1975)......................................................18, 21, 22, 29

*Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP*,
　258 F. Supp. 2d 157 (E.D.N.Y. 2003) .......................................16, 54

*Greisz v. Household Bank (Ill.), N. A.*,
　176 F. 3d 1012 (CA7 1999) .............................................................29

*Haley v. Pataki*,
　60 F.3d 137 (2d Cir. 1995) ........................................................11, 12

*Herzlinger v. Nichter*,
　No. 09 Civ.00192(JSG)(PED),
　2011 WL 4585251 (S.D.N.Y. Sept. 8, 2011) ...................................18

*Hoffmann-La Roche Inc. v. Sperling*,
　493 U.S. 165 (1989).........................................................................36

*Hooks v. Landmark Indus.*,
　No. H-12-0173, 2014 U.S. Dist. LEXIS 89223
　(S.D. Tex. July 1, 2014).....................................................................41

*In re Barnet*,
　737 F.3d 238 (2013).........................................................................6

*In re PaineWebber Ltd. P'ship Litig.*,
　147 F.3d 132 (2d Cir. 1998) ...........................................................45

*In Re Whirlpool Corporation Front Loading Washer Products Liability*
　*Litigation*,
　722 F. 3d 838 (6th Cir. 2013) ..........................................................48

*Kaszovitz v. Qiao Xing Universal Resources, Inc.*,
    No. 12 Civ. 3745 (RWS), 2012 U.S. Dist. LEXIS 111781
    (S.D.N.Y. Aug. 7, 2012) ...................................................................42

*Keim v. ADF MidAtlantic, LLC*,
    No. 12-80577, 2013 U.S. Dist. LEXIS 98373
    (S.D. Fla. July 15, 2013) ...........................................................39, 40

*LaCour v. Whitney Bank*,
    No. 8:11-cv-01896 (M.D. Fla.), Doc. No. 8
    (Dec. 15, 2011) ...............................................................................15

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990)....................................................................33, 53

*Lucero v. Bureau of Collection Recovery, Inc.*,
    639 F.3d 1239 (10th Cir. 2011) ..................................................17, 25

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..........................................................................49

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) .............................................................10

*Marek v. Chesny*,
    473 U.S. 1 (1985).................................................................................4

*Massachusetts v. E.P.A.*,
    549 U.S. 497 (2007)..........................................................................10

*Masters v. Wells Fargo Bank South Central*,
    No. A-12-CA-376-SS, 2013 U.S. Dist. LEXIS 101171
    (W.D. Tex. July 11, 2013) .........................................................40, 41

*McCauley v. Trans Union LLC*,
    402 F.3d 340 (2d Cir. 2005) .......................................................12, 29

*McDowall v.Cogan*,
    216 F.R.D. 46 (E.D.N.Y. 2003) .......................................................18

*Murphy v. Equifax Check Servs., Inc.*,
    35 F. Supp. 2d 200 (D. Conn. 1999).................................................16

*Nasca v. GC Servs. Ltd.P'ship,*
   No. 01CIV10127(DLC),
   2002 WL 31040647 (S.D.N.Y. Sept. 12, 2002) ................................................18

*North Carolina v. Rice,*
   404 U.S. 244 (1971)..........................................................................................51

*O'Brien v. Ed Donnelly Enters., Inc.,*
   575 F. 3d 567 (6th Cir. 2009) ..........................................................................29

*O'Shea v. Littleton,*
   414 U.S. 488 (1974)..........................................................................................50

*Osborn v. Bank of United States,*
   22 U.S. 738 (1824)............................................................................................36

*Pitts v. Terrible Herbst, Inc.,*
   653 F.3d 1081 (9th Cir. 2011) ..............................................................17, 20, 24

*Powell v. McCormack,*
   395 U.S. 486 (1969)..........................................................................................11

*Rand v. Monsanto Co.,*
   926 F.2d 596 (7th Cir. 1991) ............................................................................16

*Ray Haluch Gravel Co. v. Central Pension Fund,*
   134 S. Ct. 773 (2014)........................................................................................53

*Sandoz v. Cingular Wireless LLC,*
   553 F.3d 913 (5th Cir. 2008) ......................................................................17, 25

*Sanofi Pasteur, Inc. v. Weitzner,*
   No. 14-8073 (3d Cir., pet. for app. granted July 17, 2014) ..............................20

*Schaake v. Risk Mgmt. Alternatives, Inc.,*
   203 F.R.D. 108 (S.D.N.Y. 2001) .....................................................................18

*Simon v. Eastern Kentucky Welfare Rights Orgs.,*
   426 U.S. 26 (1976)............................................................................................50

*Smith v. Bayer Corp.,*
   131 S. Ct. 2368 (2011) .....................................................................................36

*Smith v. T-Mobile USA Inc.*,
    570 F.3d 1119 (9th Cir. 2009) ...........................................................34

*Sosna v. Iowa*,
    419 U.S. 393 (1975)..............................................................*passim*

*Standard Fire Ins. Co. v. Knowles*,
    133 S. Ct. 1345 (2013)......................................................................36

*Stein v. Buccaneers Ltd. P'ship*,
    No. 8:13-cv-02136, 2013 WL 7045328
    M.D. Fla. Oct. 24, 2013)...................................................................41

*Susan B. Anthony List v. Driehaus*,
    189 L. Ed. 2d 246 (2014).................................................................10

*Swan v. Stoneman*,
    635 F.2d 97 (2d Cir. 1980) ..............................................................50

*Symczyk v. Genesis HealthCare*,
    656 F. 3d 189 (3d Cir. 2011) ......................................................26, 27

*Thomas v. Am. Serv. Fin. Corp.*,
    No.12-CV-4235 ADS AKT,
    2013 WL 1898954 (E.D.N.Y. May 7, 2013) ......................17, 31, 32

*Tratt v. Retreival Masters Creditors Bureau, Inc.*,
    No. 00 CV 4560, 2001 WL 667602 (E.D.N.Y. May 23, 2001) ........16

*U.S. Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980)..............................................................*passim*

*Valdez v. Cox Communications Las Vegas Inc.*,
    557 F. App'x 655 (9th Cir. 2014) ....................................................53

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011).................................................................48, 50

*Warth v. Seldin*,
    422 U.S. 490 (1975)..........................................................................50

*Weight Watchers of Phila., Inc. v. Weight Watchers Int'l, Inc.*,
    455 F.2d 770 (2d Cir. 1972) ............................................................45

*Weiss v. Regal Collections*,
  385 F.3d 337 (3d Cir. 2004) ....................................................................*passim*

*White v. OSI Collection Servs., Inc.*,
  No. 01-CV-1343(ARR),
  2001 WL 1590518 (E.D.N.Y. Nov. 5, 2001) ...................................................18

*Wilner v. OSI Collection Servs., Inc.*,
  198 F.R.D. 393 (S.D.N.Y. 2001) ....................................................................16

*Wright v. Schock*,
  742 F.2d 541 (9th Cir. 1984) ...................................................................44, 45

**FEDERAL STATUTES**

28 U.S.C. § 1292(b) ...........................................................................1, 2, 6, 20

28 U.S.C. § 1332(d)(2)........................................................................*passim*

28 U.S.C. § 2072............................................................................................43

29 U.S.C. § 216(b) .............................................................................26, 34, 43

47 U.S.C. § 216(b) .......................................................................................34

**RULES**

Fed. R. Civ. P. 12(b)(1)...............................................................................16

Fed. R. Civ. P. 23 ..............................................................................*passim*

Fed. R. Civ. P. 68 ..............................................................................*passim*

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Article III ......................................................................*passim*

**OTHER AUTHORITIES**

109th Cong., 1st Sess. p. 4, 2005 WL 627977, at *5 (Feb. 28, 2005)...............14, 47

Manual for Complex Litigation Third, § 30.41 .....................................42

Defendants-Appellants New Alliance Bank ("New Alliance") and First Niagara Financial Group, Inc. ("First Niagara") (collectively, "the Bank") respectfully submit their opening brief in support of this 28 U.S.C. § 1292(b) interlocutory appeal from the District Court's Order denying the Bank's motion to dismiss this lawsuit initiated by Plaintiff-Appellee Patrick Tanasi ("Tanasi") for lack of subject matter jurisdiction.

The Bank asks this Court to settle a question that has split the District Courts of New York: whether, in a Rule 23 putative class action, a defendant's Rule 68 offer of judgment, which fully satisfies the named plaintiff's individual claims and is made before a class certification motion is filed, moots the class action. The Western District ruled against the Bank but recognized, "This is not to say that there are not compelling reasons to find differently." (SPA-11).[1] Given the divergent views on this pressing issue, the Court's decision will have great significance not only for the parties directly involved, but also for future class action litigants in the Circuit.

## STATEMENT OF JURISDICTION

Tanasi's complaint alleged federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). (A-10). The Bank

---

[1] "SPA-__" refers to the Special Appendix bound with this Brief. "A-__" refers to the Joint Appendix filed concurrently with this Brief.

1

moved to dismiss the complaint for lack of subject matter jurisdiction on the ground that Tanasi's claims were moot, because the Bank had made an offer of judgment to Tanasi under Fed. R. Civ. P. 68, which fully satisfied his individual claims, affording him complete relief.  (A-39).  The District Court denied the Bank's motion by Order dated August 27, 2013.  (SPA-1).  On September 6, 2013, the Bank moved to certify the August 27, 2013 Order for interlocutory appeal under 28 U.S.C. § 1292(b).  (A-273).  The District Court granted that motion by Order dated December 17, 2013.  (SPA-18).  On December 24, 2013, the Bank filed a petition for permission to appeal in this Court within ten days of the District Court's certification Order as required by 28 U.S.C. § 1292(b).  (App. No. 13-4803 Doc. No. 1).  By Order dated May 7, 2014, this Court granted the Bank's petition, formally establishing appellate jurisdiction under 28 U.S.C. § 1292(b).  (A-352).

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

District Judge Skretny certified the following question for review: "If, in keeping with the Bank's pre-certification Rule 68 offer of judgment, which afforded Tanasi, the named plaintiff, complete relief on his individual claims in this putative class action, the District Court were to enter judgment in Tanasi's favor, would the entire Rule 23 putative class action be rendered moot?"

For the reasons established in this brief, the Bank urges this Court to answer "Yes" to the certified question, thereby alleviating the split in authority within this Circuit.

## STATEMENT OF THE CASE AND OF THE FACTS

### A.     The Complaint

Tanasi filed this putative nationwide class action complaint against the Bank on July 9, 2012.  The complaint alleged that New Alliance, a predecessor of First Niagara, improperly assessed overdraft fees on Tanasi's checking account.  (A-5). The complaint further alleged that First Niagara is liable as the successor-in-interest to New Alliance for its predecessor's alleged wrongdoing, because New Alliance was merged into First Niagara effective April 15, 2011.  (A-8, A-9).

The complaint asserted various state law claims for damages on behalf of Tanasi and all similarly situated former New Alliance checking account customers. (A-17, A-18).  Tanasi did not seek injunctive relief because there is nothing to enjoin: New Alliance engaged in all of the alleged wrongdoing; New Alliance ceased to exist when it was merged into First Niagara; and Tanasi closed his account prior to the merger.  (A-8, A-9).  According to the complaint, the putative class likely contains thousands of members, all former New Alliance checking account holders.  (A-18).

3

### B. The Bank's Rule 68 Offer

On July 18, 2012, the Bank, without admitting liability, made a Rule 68 offer of judgment[2] to Tanasi that afforded him complete relief on his individual claims. (A-103).[3] To date, Tanasi has not accepted the offer. If this Court concludes that Tanasi's action is moot, thereby reversing the District Court's August 27, 2013 Order, the District Court will enter judgment in favor of Tanasi individually in accordance with the Bank's Rule 68 offer. The District Court will then dismiss the class action complaint.

### C. The Issue of Subject Matter Jurisdiction Is Certified for Interlocutory Appeal

When Tanasi did not accept its Rule 68 offer, the Bank moved to dismiss the action for lack of subject matter jurisdiction. On August 27, 2013, Judge Skretny denied the motion, observing that "[i]n this Circuit it is settled that, if Tanasi were not seeking to represent a class, the Bank's complete offer of judgment would

---

[2] Rule 68 permits a defendant, at least 14 days before the date set for trial, to serve the plaintiff with "an offer to allow judgment on specified terms." Fed. R. Civ. P. 68. "The plain purpose of Rule 68 is to encourage settlement and avoid litigation." *Marek v. Chesny*, 473 U.S. 1, 5 (1985).

[3] The Bank offered to have judgment entered in favor of Tanasi in the amount of $10,000, together with reasonable attorneys' fees and costs. (A-103). Since Tanasi paid less than $2,500 in total overdraft fees, the offer substantially exceeded what he could ever recover if he were to prevail on his claims in court. Tanasi has not contested the sufficiency of the offer. As part of its decision, the District Court found that the Bank's Rule 68 offer was "undisputably sufficient to satisfy Tanasi's full claim." (SPA-5).

4

moot his claim and strip this Court of subject-matter jurisdiction over it." (SPA-5). However, the Court declined to dismiss the case because Tanasi pleaded it as a class action. In reaching its decision, the Court relied on certain older Supreme Court decisions which had created limited exceptions to the mootness rule in the context of class actions. The Bank had contended that a later decision, *Genesis HealthCare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013), abrogated the reasoning of these earlier cases and supported dismissal of the entire action, yet the District Court distinguished *Genesis HealthCare* on the ground that it involved a Fair Labor Standards Act ("FLSA") collective action, and not a Rule 23 class action.

But Judge Skretny openly expressed doubts regarding his ruling. The Court acknowledged that there were "compelling reasons to find differently." (SPA-11). It found no "clear precedent" in the Circuit on this precise issue. (*Id.*). This Court has not decided the issue, and the district courts are almost evenly split. (SPA-9) (identifying five New York district court decisions that find mootness, and seven that do not). Judge Skretny further acknowledged that *Genesis HealthCare* may well presage a change in the governing law, noting that "some of the [Supreme] Court's logic is arguably applicable to Rule 23 actions, and it is conceivable that the Court may eventually rule in like manner with respect to class actions …." (SPA-6).

On September 6, 2013, the Bank requested that the District Court certify its ruling on subject matter jurisdiction for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and stay the action pending appeal. The District Court granted that motion by Order dated December 17, 2013. (SPA-18). On December 24, 2013, the Bank timely filed a petition for permission to appeal in this Court as required by 28 U.S.C. § 1292(b). (App. No. 13-4803 Doc. No. 1). By Order dated May 7, 2014, this Court granted the Bank's petition, establishing appellate jurisdiction under 28 U.S.C. § 1292(b). (A-352). This appeal ensues.

## STANDARD OF REVIEW

Distilled to its essence, the issue on appeal is whether the Bank's Rule 68 offer of judgment rendered Tanasi's putative class action moot, requiring the action's dismissal for lack of subject matter jurisdiction. Mootness and subject matter jurisdiction are questions of law that are reviewed de novo. *In re Barnet*, 737 F.3d 238, 242 (2013).

## SUMMARY OF ARGUMENT

Article III of the Constitution limits federal court jurisdiction only to live cases and controversies. Jurisdiction is lacking here, because neither Tanasi, nor the putative class he seeks to represent, can provide the required Article III standing. There is no live case or controversy.

6

The Bank served Tanasi with a Rule 68 offer of judgment which fully satisfied his individual claims. Tanasi did not accept the offer. Despite the passage of nearly two years, Tanasi has not filed a class certification motion. Under the well-established law of this Circuit, as the District Court correctly recognized, Tanasi's individual claims are moot since he has been offered complete relief with the offer of judgment. He has no personal stake in the litigation going forward. However, the Court denied the Bank's motion to dismiss solely because Tanasi's complaint was pleaded as a class action. The distinction is really one without meaning, as this brief will demonstrate.

The District Court erred in failing to dismiss this action as moot. Its status as a putative class action should not change the analysis. The older Supreme Court decisions relied upon by the District Court, which recognized limited exceptions to the mootness doctrine in the context of class actions, are neither binding nor persuasive here. And, their reasoning was expressly abrogated by the Supreme Court's April 2013 decision in *Genesis HealthCare*.

In *Genesis HealthCare*, the Supreme Court specifically held that the same decisions on which Judge Skretny relied did not, in fact, bar the dismissal of the named plaintiff's FLSA collective action for damages. Because the defendant's Rule 68 offer mooted the plaintiff's individual claims before a certification motion was filed, according to the Supreme Court, the plaintiff had "no personal interest in

representing putative, unnamed claimants, nor any other continuing interest that would preserve her suit from mootness." 133 S. Ct. at 1532. "[T]he mere presence of collective-action allegations in the complaint," the Supreme Court emphasized, "cannot save the suit from mootness once the individual claim is satisfied." *Id.* at 1529. The fully sufficient Rule 68 offer effectively extinguishes the claim. Judge Skretny failed to appreciate this aspect of the Court's *Genesis HealthCare* decision.

The District Court erroneously concluded that the reasoning of *Genesis HealthCare* does not apply in Rule 23 class actions, citing the decision's language that such actions are "fundamentally different" from FLSA collective actions. But those fundamental differences relate to the certification process itself; they do not apply in the pre-certification context, where this case is now.

The major difference between an FLSA collective action and a Rule 23 class action is procedural: in an FLSA collective action, only plaintiffs who affirmatively opt-in are bound by the judgment. In a typical Rule 23 class action seeking monetary damages, such as this one, potential class members are bound by the judgment unless they affirmatively opt out. Understood in context, the "fundamental difference" between a Rule 23 class action and an FLSA collective action manifests only after initial certification is granted. That distinction is irrelevant in this case, because a Rule 23 certification motion has never been filed.

Prior to the filing of a certification motion, unnamed putative class members do not have an independent legal interest in the case or controversy. They occupy the same position as those persons who had yet to opt in to Symczyk's FLSA action in *Genesis HealthCare*. They have no standing.

Unnamed class members cannot proceed when the named plaintiff's claim is moot. Because a class certification motion has never been filed in this Rule 23 action, much less a class certified, the reasoning of *Genesis HealthCare* should apply. The similarities between the cases far outnumber any differences. The decision requires dismissal of Tanasi's entire action, as Judge Skretny should have ruled.

Dismissal of this action as moot will not adversely affect Tanasi; on the contrary, he will benefit from the judgment entered in his favor. The offer exceeds his damages and includes reasonable attorneys' fees. Nor will dismissal impair any rights of the unidentified putative class members. They are not parties to this action, because a class has not been certified. They remain free to bring their own lawsuits, and the applicable statute of limitations has been tolled during the pendency of Tanasi's action. The unnamed class members are in the same position they would have occupied had Tanasi accepted the Bank's offer of judgment or never brought suit at all. Moreover, any desire of Tanasi's attorneys to earn class action attorneys' fees does not create a "case or controversy" under Article III.

9

The histories of Rule 23 and Rule 68, this Court's decisions in analogous contexts, the Supreme Court's recent class action jurisprudence, and the public policies underlying the enactment of CAFA all support dismissal.

Since Tanasi does not have a live case or controversy involving the Bank, this Court should reverse and remand with direction to the District Court to enter judgment in favor of Tanasi individually in accordance with the Bank's Rule 68 offer. Then the District Court should dismiss this action for lack of subject matter jurisdiction.

## **ARGUMENT**

### I.   **Under Article III of the Constitution, Federal Courts Lack Subject Matter Jurisdiction over a Moot Claim**

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" or "Controversies." *See* U.S. Const. art. III, § 2, cl. 1; *Susan B. Anthony List v. Driehaus*, 189 L. Ed. 2d 246, 254 (2014); *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007). Subject matter jurisdiction must exist before a federal judge can decide a case. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *accord*, *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam).

"When a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Fox v. Bd. of Trustees of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (internal punctuation omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "The required legally cognizable interest has … been described as a requirement that plaintiff have a 'personal stake' in the litigation. Without such a personal stake, a court lacks subject matter jurisdiction and the case must be dismissed." *Ambalu v. Rosenblatt*, 194 F.R.D. 451, 452 (E.D.N.Y. 2000) (citation omitted). "[I]t is axiomatic that there must be a continuing controversy capable of redress by this Court." *Haley v. Pataki*, 60 F.3d 137, 141 (2d Cir. 1995).

Put plainly, each plaintiff in an action must have a "personal stake" or the case is moot.

## II. In a Non-Class Action, an Unaccepted Offer of Complete Relief Moots the Plaintiff's Claims

In this Circuit, an unaccepted Rule 68 settlement offer which affords the plaintiff complete relief moots the plaintiff's claims, provided that the district court enters judgment against the defendant in accordance with the terms of the offer before dismissing the action. *See, e.g.*, *Cabala v. Crowley*, 736 F.3d 226, 228 (2d Cir. 2013) (if defendant offers to settle for the full amount of plaintiff's damages and judgment is entered in favor of plaintiff based on that offer, "after such a

disposition … the controversy [is] resolved such that the court lacks further jurisdiction"); *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (affirming dismissal of Fair Debt Collection Practices Act claim based upon an unaccepted Rule 68 offer of judgment, because "if a defendant consents to judgment in the maximum amount for which the defendant could be held liable, 'there is no justification for taking the time of the court and the defendant in the pursuit of … claims which [the] defendant has more than satisfied'") (quoting *Abrams v. Interco, Inc.*, 719 F.2d 23, 32 (2d Cir. 1983)); *McCauley v. Trans Union LLC*, 402 F.3d 340, 342 (2d Cir. 2005) (entry of judgment against the defendant in accordance with its Rule 68 offer of complete relief "remove[s] any live controversy from this case and render[s] it moot"). As the District Court openly acknowledged, had Tanasi brought an individual (non-class) action, these precedential decisions would have required it to dismiss the action after entering judgment in favor of Tanasi individually in accordance with the Bank's Rule 68 offer of complete relief. (SPA-5).

## III. In a Putative Class Action, an Unaccepted Offer of Complete Relief Made Before a Class Certification Motion Is Filed Moots the Named Plaintiff's Individual and Class Claims

This Court has recognized, "[I]n general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot." *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994). *See also Haley v.*

*Pataki*, *supra*, 60 F.3d at 141-42 n. 2 ("Appellees brought suit assertedly on behalf of all other similarly situated legislative employees, yet made no motion for class certification pursuant to Fed. R. Civ. P. 23. The justiciability of their claims alone therefore controls."). This principle is not in dispute.

While this Circuit has not specifically decided the certified question presented here, the Seventh Circuit has, holding that the mooting of a named plaintiff's individual claims before the filing of a class certification motion also moots the class claims and requires dismissal of the entire action. In *Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011), the plaintiff filed a putative class action alleging that defendant violated the Telephone Consumer Protection Act ("TCPA"). Before the plaintiff moved for class certification, the defendant offered him complete relief, which he rejected. The District Court dismissed the action as moot, and the Seventh Circuit affirmed. The Court emphasized that "[t]he doctrine of mootness stems from Article III of the Constitution, which limits the jurisdiction of federal courts to live cases or controversies." *Id.* at 894. The mootness doctrine "demands that the parties to a federal case maintain a personal stake in the outcome at all stages of the litigation." *Id.* at 894-95. Thus, "[t]o allow a case, not certified as a class action and with no motion for class certification even pending, to continue in federal court when the sole plaintiff no longer maintains a personal

stake defies the limits on federal jurisdiction expressed in Article III." *Id*. at 896. This Court now faces this exact issue.

While the Seventh Circuit decided *Damasco* in 2011, before *Genesis HealthCare*, its rationale is instructive, since it addresses the same arguments raised by Tanasi before Judge Skretny to defeat mootness. Should the Court find this action to be moot by virtue of the Rule 68 offer of judgment, Tanasi asserted, the Court would essentially endorse the practice of "picking off" plaintiffs and ultimately frustrate the public policy allowing class action litigation. Tanasi's argument makes the implicit, but unsupported, assumption that he is an unsophisticated consumer and that he represents other similarly situated, unsophisticated bank customers.

The Senate Committee on the Judiciary found the opposite to be true in its Report on CAFA: "[T]he lawyers who bring the lawsuits effectively control the litigation; their clients – the injured class members – typically are not consulted about what they wish to achieve in the litigation and how they wish to proceed. In short, the clients are marginally relevant at best. This stands in stark contrast to the designed purpose of class actions." S. Rep. 109-14 ("S. Report"), 109th Cong., 1st Sess. p. 4, 2005 WL 627977, at *5 (Feb. 28, 2005).

The reality of the situation is that Tanasi's counsel are part of a sophisticated network of class action plaintiffs' attorneys. Over 100 similar putative class

actions have already been consolidated in a multi-district litigation proceeding to address similar debit reordering claims involving other banks. *See* MDL No. 2036 (S.D. Fla.). Many other similar actions, including the present case, were instituted after MDL No. 2036 became overloaded with class actions and the Judicial Panel for Multi-District Litigation *sua sponte* stopped approving motions to transfer cases to MDL No. 2036. *See, e.g.*, *LaCour v. Whitney Bank*, No. 8:11-cv-01896 (M.D. Fla.), Doc. No. 8 (Order Vacating Conditional Transfer Order, MDL No. 2036) (Dec. 15, 2011).

Given the extensive litigation preceding this case, the Bank's "procedural maneuver" of serving a Rule 68 offer must be viewed in the context of the ongoing complex, and costly, litigation already addressing these issues in other parts of the country. As *Damasco* indicates, an easy solution to the problem exists. Upon filing a class complaint, the named plaintiff can simultaneously move for class certification. The pendency of such a motion protects a putative class from attempts to "buy off" the named plaintiff. *See Damasco*, 662 F.3d at 896-97.

Many New York district courts have reached the same conclusion the Seventh Circuit reached in *Damasco*. In *Ambalu v. Rosenblatt*, *supra*, plaintiff brought a class action against the defendant for violating the Fair Debt Collection Practices Act. Before a class certification motion was filed, the defendant served a Rule 68 offer of judgment which afforded the plaintiff complete relief. The

Eastern District dismissed the action, holding that the offer mooted the plaintiff's individual and class claims:

> Having offered all that Ambalu could hope to recover through this litigation, "there is no justification for taking the time of the court and the defendant in the pursuit of [a] minuscule individual claim[] which defendant has …. satisfied." *Abrams v. Interco Inc.*, 719 F.2d 23, 32 (2d Cir. 1983); *see also Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991) ("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate … and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake."); *Murphy v. Equifax Check Servs., Inc.*, 35 F. Supp. 2d 200, 203 (D. Conn. 1999) (dismissing plaintiff's Fair Debt Act claim because defendant "agreed to give the plaintiff full relief").

> \*          \*          \*

> No class has been certified and no motion has been made for certification.  Therefore nothing prevents the defendant from attempting to facilitate settlement by making a pre-certification Rule 68 offer of judgment …. If a named representative's claim becomes moot before class certification, the entire case is to be dismissed for lack of subject matter jurisdiction.

194 F.R.D. at 453.  *Accord*, *Franco v. Allied Interstate LLC*, No. 13 Civ. 4053, 2014 U.S. Dist. LEXIS 47077 (S.D.N.Y. April 2, 2014), *on appeal*, No. 14-1464 (2d Cir.); *Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP*, 258 F. Supp. 2d 157, 160-61 (E.D.N.Y. 2003); *Tratt v. Retreival Masters Creditors Bureau, Inc.*, No. 00 CV 4560, 2001 WL 667602, at \*2 (E.D.N.Y. May 23, 2001); *Wilner v. OSI Collection Servs., Inc.*, 198 F.R.D. 393, 394-96 (S.D.N.Y. 2001); *Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85, 87-88 (E.D.N.Y. 2001).

16

The Supreme Court's April 2013 decision in *Genesis HealthCare* requires dismissal here. In that decision, the Supreme Court held that an FLSA collective action was mooted in its entirety when the defendant served the plaintiff with a Rule 68 offer of judgment which fully satisfied her claims before a certification motion was filed. The Court concluded that the plaintiff had "no personal interest in representing putative, unnamed claimants, nor any other continuing interest that would preserve her suit from mootness." 133 S. Ct. at 1532. The Court further emphasized that "the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied." *Id.* at 1529. In other words, the case would no longer continue since that plaintiff no longer maintained a "personal stake" in the outcome.

Nevertheless, Judge Skretny dismissed the foregoing authorities and instead found "most persuasive" decisions of other circuit courts concluding the opposite: that an unaccepted Rule 68 offer of complete relief made to the named plaintiff before a class certification motion is filed does not moot the action. *See* SPA-7 (citing *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913 (5th Cir. 2008); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011); *Lucero v. Bureau of Collection Recovery, Inc.*,

17

639 F.3d 1239 (10th Cir. 2011)).[4] (As discussed *infra*, *Weiss* and *Pitts* may no longer be good law as they are being reexamined by the Third Circuit and the Ninth Circuit, respectively).

These circuit court cases, in turn, relied heavily on five older Supreme Court mootness decisions, all of which pre-dated *Genesis HealthCare – Sosna v. Iowa*, 419 U.S. 393 (1975); *Gerstein v. Pugh*, 420 U.S. 103 (1975); *Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326 (1980); *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980); and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). It should be remembered that the District Court, noting the comment in *Genesis HealthCare* that "Rule 23 actions are fundamentally different from collective

---

[4] As the District Court fairly observed, many other New York district courts concur with the above-cited circuit court decisions, reflecting a sharp difference of opinion of New York courts on the issue presented in this appeal. *See* SPA-9 (citing *Thomas v. Am. Serv. Fin. Corp.*, No.12-CV-4235 ADS AKT, 2013 WL 1898954, at *9 (E.D.N.Y. May 7, 2013); *Herzlinger v. Nichter*, No. 09 Civ. 00192(JSG)(PED), 2011 WL 4585251, at *8 (S.D.N.Y. Sept. 8, 2011), *adopted by* No. 7:09-CV-00192, 2011 WL 4575126, at *1 (S.D.N.Y. Oct. 3, 2011); *McDowall v. Cogan*, 216 F.R.D. 46, 47-52 (E.D.N.Y. 2003); *Eckert v. Equitable Life Assurance Soc. of the U.S.*, 227 F.R.D. 60, 63–64 (E.D.N.Y. 2005); *Nasca v. GC Servs. Ltd. P'ship*, No. 01 CIV10127(DLC), 2002 WL 31040647, at *3 (S.D.N.Y. Sept. 12, 2002); *Schaake v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 108, 110-12 (S.D.N.Y. 2001); *White v. OSI Collection Servs., Inc.*, No. 01-CV-1343(ARR), 2001 WL 1590518, at *4 (E.D.N.Y. Nov. 5, 2001)).

18

actions under the FLSA," 133 S. Ct. at 1529, distinguished *Genesis HealthCare* on the ground that it was an FLSA collective action, not a Rule 23 class action.[5]

The District Court's reliance on *Sosna* and its progeny was misplaced, because *Genesis HealthCare* abrogated the reasoning of those decisions, as discussed in Part III.A.  In addition, the District Court apparently misunderstood the reference in *Genesis HealthCare* to the "fundamental differences" between FLSA collective actions and Rule 23 class actions.  As shown in Part III.B.1, those differences relate to the certification process itself, only after a motion for certification has been filed and granted.  The distinction boils down to whether the procedure requires opting in or opting out.  The distinction is irrelevant in this case, where a class certification motion has not even been filed, much less a class certified.  Indeed, as discussed in Part III.B.2, many courts have expressly concluded that the Supreme Court's reasoning in *Genesis HealthCare* is applicable in a Rule 23 class action such as the present case.  The histories of Rule 23 and Rule 68, this Court's decisions in analogous contexts, the Supreme Court's recent class action jurisprudence, and the public policy underlying the enactment of

---

[5] As discussed earlier, however, the District Court acknowledged that there were "compelling reasons to find differently" (SPA-11) and certified its decision for interlocutory appeal.

CAFA further support dismissal of this entire action, as demonstrated in Sections III.B.3 through III.B.5.

Although substantial authority supporting the Bank's position existed even before *Genesis HealthCare*, judicial opinion was divided. *Genesis HealthCare* should have decided the question. The decision's rationale establishes that Tanasi's claims – both individual and class – are moot and that this action must be dismissed in its entirety for lack of subject matter jurisdiction.

Notably, two of the Circuit Court opinions that Judge Skretny found "most persuasive" in denying the Bank's motion to dismiss are presently being reexamined by those Courts in light of *Genesis HealthCare* in Section 1292(b) interlocutory appeals. *See Chen v. Allstate Ins. Co.*, No. 13-16816 (9th Cir., pet. for app. granted Sept. 10, 2013) (reexamining *Pitts*); *Sanofi Pasteur, Inc. v. Weitzner*, No. 14-8073 (3d Cir., pet. for app. granted July 17, 2014) (reexamining *Weiss*). The First Circuit is also reviewing the issue. *See Bais Yaakov of Spring Valley v. ACT, Inc.*, No. 14-8005 (1st Cir. pet. for app. granted July 18, 2014). As of this writing, therefore, at least three other circuits are considering the same issue presented here.

A.   ***Genesis HealthCare* Abrogated the Reasoning of the Decisions on Which the District Court Relied in Finding Jurisdiction to Exist**

1.   **Summary of *Sosna* and Its Progeny**

The pre-*Genesis HealthCare* Supreme Court decisions that lie at the heart of the District Court's opinion may be briefly summarized, and distinguished, as follows:

1.   <u>*Sosna v. Iowa* (1975)</u>.  In *Sosna*, the Supreme Court held that a class action does not become moot when the named plaintiff loses his personal stake in the outcome of the litigation **after** the district court certifies a class.  In that case, the plaintiff filed a class action challenging the constitutionality of Iowa's one-year durational residency requirement for invoking the state's divorce court jurisdiction.  **After** the District Court certified a class and ruled in favor of the plaintiff on the merits, the defendant sought Supreme Court review.  While that appeal was pending, the plaintiff obtained a divorce in another state and resided in Iowa for more than one year.  Although the Supreme Court acknowledged that the plaintiff's individual claim was moot, it refused to dismiss the action because the **district court had already certified a class**, which gave the putative class members "a legal status separate from the interest asserted by [plaintiff]."   419 U.S. at 399.   The Court also anticipated the

21

possibility that a case might become moot with respect to the named plaintiff's individual claim before the district court could rule on class certification.  In such a case, "whether the certification can be said to 'relate back' to the filing of the complaint may depend on the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review."  *Id.* at 402 n. 11.

2.  *Gerstein v. Pugh* (1975).  *Gerstein* involved a challenge to the constitutionality of state pretrial detention procedures.  By the time the case reached the Supreme Court, the named plaintiffs had been convicted and their pretrial detention had ended.  Nevertheless, the Court held that the case belonged to that "narrow class" of cases in which the termination of a class representative's claim does not moot the claims of the putative class members.  The Court reasoned that because the time of pretrial custody was short, it was "most unlikely" that any named plaintiff or potential class representative "would be in pretrial custody long enough for a district judge to certify a class."  Accordingly, the named plaintiff's substantive claim was one "**'distinctly capable of repetition yet evading review' and, therefore, not moot.**"  420 U.S. at 110 n. 11 (emphasis added).

3.  *Deposit Guaranty Nat. Bank v. Roper* (1980).  In *Roper*, the

named plaintiffs filed a class action alleging that the defendant charged them usurious fees in violation of federal law. The District Court denied class certification. Thereafter, the defendant tendered an offer of judgment that the plaintiffs declined. The offer included the maximum amount of damages, legal interest and court costs, but not attorneys' fees or other litigation expenses. **The offer thus did not provide the named plaintiffs with fully sufficient relief.** The District Court entered judgment and dismissed the case. On appeal, the Fifth Circuit reversed the denial of class certification. Subsequently, the Supreme Court granted certiorari on the issue of whether the offer of judgment terminated the named plaintiffs' right to appeal the denial of class certification. The Court held that the case was not moot because the named **plaintiffs retained "an economic interest in class certification …, including 'their desire to shift part or all of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails.**" 445 U.S. at 333, 336 (emphasis added). In addition, the Court expressed concern at the ability of defendants to "buy off" proposed class representatives before a court can certify a class, thereby "frustrat[ing] the objectives of class actions." *Id.* at 339.

23

4.    *U.S. Parole Comm'n v. Geraghty* (1980).    In *Geraghty*, a federal prisoner brought a class action challenging the constitutionality of certain parole release guidelines.    The District Court denied class certification and ruled against the plaintiff.    While the appeal was pending, the plaintiff completed his sentence and was released from prison.    The Supreme Court held that the release did not moot his appeal of the order denying class certification.    **If the denial of class certification were reversed on appeal, the corrected ruling would "relate[] back" to the date of the original denial**.    445 U.S.at 404 n. 11 (emphasis added).    In other words, the named plaintiff retained an interest in the outcome of the litigation.

5.    *County of Riverside v. McLaughlin* (1991).    In *McLaughlin*, the plaintiffs brought a class action challenging the county's policy of combining probable cause determinations with its arraignment procedures.    The Court held that, although the named plaintiffs' claims were moot because they had received a probable cause determination or had been released, that did not moot the class claims.    **Where the claims are "inherently transitory," "the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution."**    500 U.S. at 52 (emphasis added).

From these Supreme Court authorities (and the Third, Fifth, Ninth and Tenth Circuit decisions that apply them, *see* page 17, *supra*), Judge Skretny focused upon the following legal principles, which he viewed as supporting his conclusion that Tanasi's putative class action was not moot:

> The Ninth Circuit [in *Pitts*] … relied primarily on … *County of Riverside v. McLaughlin* … [for the proposition] that "transitory" claims can relate back to the time of the filing of the complaint and are not rendered moot by an offer of judgment …. "Where, as here, a defendant seeks to 'buy off' the small individual claims of the named plaintiffs, the analogous claims of the class – though not inherently transitory – become no less transitory than inherently transitory claims." ….

> The Tenth Circuit [in *Lucero*] found that a "nascent interest attaches to the proposed class upon the filing of a class complaint such that a rejected offer of judgment for statutory damages and costs made to a named plaintiff does not render the case moot under Article III" …. ([C]iting *U.S. Parole Comm'n v. Geraghty* …).

> The Fifth Circuit [in *Sandoz*], finding support in *Sosna*, … also held that a class certification motion made after an offer of judgment would "relate back" to the time of the filing of the complaint.  Therefore, if the class were eventually certified, an offer of judgment made only to the named plaintiff could not moot the entire class ….

> The Third Circuit [in *Weiss*] … found class-action claims to be transitory and thus insulated from mootness when the defense attempts to pick off plaintiffs; it found the relation-back principle articulated in *Sosna* to be applicable; and it also raised policy concerns, finding that judicial resources would be wasted and the purpose of Rule 23 would be thwarted if named plaintiffs could be picked off early in the litigation.

\*                    \*                    \*

25

[T]he Third Circuit [also] … pointed to the Supreme Court's statement in *Roper* that

> [r]equiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover, it would invite waste of judicial resources by stimulating successive suits brought by other claiming aggrievement.

(SPA-7-SPA-10). While Judge Skretny's summary of these decisions was accurate, his application of their holdings to this controversy was misplaced. The cases are not analogous, and the principles upon which the District Court focused do not apply here.

> **2.** **Genesis HealthCare Held that *Sosna* and Its Progeny Did Not Bar the Dismissal of an FLSA Collective Action Where the Defendant's Pre-Certification Rule 68 Offer Provided Complete Relief to the Named Plaintiff**

*Genesis HealthCare* expressly held that *Sosna* and its progeny did not bar the dismissal of an FLSA collective action where the defendant's Rule 68 offer preceded the filing of a certification motion and the action was one for damages. In *Genesis HealthCare*, plaintiff Symczyk, a registered nurse, sued her employer under the FLSA and sought statutory damages. *See Symczyk v. Genesis HealthCare*, 656 F. 3d 189, 190 (3d Cir. 2011). The defendant served a Rule 68 offer of judgment and moved to dismiss the case as moot. *Id*. at 191. Symczyk opposed the motion, arguing that the defendant was trying to "pick off" the named plaintiff before the FLSA's collective action process under 29 U.S.C. § 216(b)

could unfold.[6]  *Id.*  The District Court dismissed the action because no other individuals had joined Symczyk's suit.  The Third Circuit reversed.

As in the Second Circuit, in the Third Circuit an unaccepted offer of judgment that fully satisfies the named plaintiff's claim moots the plaintiff's individual claims.[7]  *Id.* at 195.  But the Court concluded that the defendant's attempt to "pick off" the named plaintiff with a Rule 68 offer could short-circuit the process and thereby "frustrate the objectives of collective actions."  *Id.* at 195,

---

[6] 29 U.S.C. §  216(b) provides, in relevant part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.  An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

[7] In that regard, the law in the Third Circuit comports with the law in this Circuit.  *See* Part II *supra.*

27

201. The Third Circuit remanded the case to the district court so that Symczyk could seek conditional certification. *Id.* at 201. The Court further held that, if she succeeded, the certification motion would relate back to the date of her complaint. *Id.*

The Supreme Court granted certiorari and ultimately reversed the Third Circuit, holding that putative collective action allegations are insufficient to maintain a case where the plaintiff's individual claims have been mooted by service of a Rule 68 offer of judgment before the filing of a certification motion. The Court ruled that the plaintiff had "no personal interest in representing putative, unnamed claimants, nor any other continuing interest that would preserve her suit from mootness." 133 S. Ct. at 1532. The Court could not have been more clear: "the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied." *Id.* at 1529.

To reach its decision, the Supreme Court found the authorities on which Judge Skretny relied – namely, the *Sosna* line of cases – to be inapplicable in the pre-certification context. The Supreme Court commenced its analysis by reaffirming "well-settled mootness principles." 133 S. Ct. at 1529. Article III, Section 2 of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." *Id.* at 1528. In order to invoke federal court jurisdiction, "a plaintiff must demonstrate that he possesses a legally cognizable interest, or

'personal stake,' in the outcome of the action." *Id.* (citation omitted). "This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Id.* The Court continued, "'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Id.* (citation omitted). Where "an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* (citations omitted).

Expressly assuming that an unaccepted offer of judgment in full satisfaction of a plaintiff's individual claim renders that claim moot,[8] the Court directly

---

[8] The Court did not formally decide the issue because Symczyk had waived it on appeal. 133 S. Ct. at 1529. Nevertheless, the Court left little doubt how it would have ruled had the issue not been waived by Symczyk:

> While we do not resolve the question whether a Rule 68 offer that fully satisfies the plaintiff's claims is sufficient by itself to moot the action, *supra*, at 1528, we note that Courts of Appeals on both sides of that issue have recognized that a plaintiff's claim may be satisfied even without the plaintiff's consent. Some courts maintain that an unaccepted offer of complete relief alone is sufficient to moot the individual's claim. *E.g.*, *Weiss*, *supra*, at 340; *Greisz v. Household Bank (Ill.), N. A.*, 176 F. 3d 1012, 1015 (CA7 1999). Other courts have held that, in the face of an unaccepted offer of complete relief, district courts may "enter judgment in favor of the plaintiffs in accordance with the defendants' Rule 68 offer of judgment." *O'Brien v. Ed*

(continued...)

confronted Symczyk's argument, based upon *Sosna*, *Gerstein*, *Roper*, *Geraghty* and *McLaughlin*, that an unaccepted Rule 68 offer made before a conditional certification motion has been filed does not moot an FLSA collective action.

The Supreme Court rejected this argument, holding that *Sosna* and its progeny were "by their own terms, inapplicable" in such a situation. In those cases, class certification proceedings had already occurred, and certification had either been granted or improperly denied. 133 S. Ct. at 1529. By contrast, Symczyk had not filed a conditional certification motion: "Here, respondent had not yet moved for 'conditional certification' when her claim became moot, nor had the District Court anticipatorily ruled on any such request. Her claim instead became moot prior to these events …. There is simply no certification decision to which respondent's claim could have related back." *Id.* at 1530.

The Court further criticized Symczyk's reliance on the *Sosna* line of cases, expressing that "[o]ur cases invoking the 'inherently transitory' relation-back

---

(...continued)

> *Donnelly Enters., Inc.*, 575 F. 3d 567, 575 (CA6 2009); *see also McCauley v. Trans Union, LLC*, 402 F. 3d 340, 342 (CA2 2005). Contrary to the dissent's assertion, *see* post, at 8 (opinion of Kagan, J.), nothing in the nature of FLSA actions precludes satisfaction – and thus the mooting – of the individual's claim before the collective-action component of the suit has run its course.

133 S. Ct. at 1529 n. 4.

rationale do not apply." *Id.* at 1531. As did Tanasi before Judge Skretny, Symczyk had argued that "defendants can strategically use Rule 68 offers to 'pick off' named plaintiffs before the collective-action process is complete, rendering collective actions 'inherently transitory' in effect." *Id.* Despite her contentions, that underlying rationale, the Court explained, "was developed to address circumstances in which the challenged conduct was effectively unreviewable because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course." *Id.* at 1525-26. Yet, that rationale does not apply to a claim seeking damages:

> [A] claim for damages cannot evade review; it remains live until it is settled, judicially resolved, or barred by a statute of limitations. Nor can a defendant's attempt to obtain settlement insulate such a claim from review, for a full settlement offer addresses plaintiff's alleged harm by making the plaintiff whole. While settlement may have the collateral effect of foreclosing unjoined claimants from having their rights vindicated in *respondent's* suit, such putative plaintiffs remain free to vindicate their rights in their own suits. They are no less able to have their claims settled or adjudicated following respondent's suit than if her suit had never been filed at all.

*Id.* at 1531 (emphasis in original). Suits seeking measurable damages are different.

Before Judge Skretny, Tanasi relied on the *Sosna* line of cases to support his argument that this case is not moot by virtue of the Rule 68 offer. He also cited an Eastern District decision, *Thomas v. Am. Serv. Fin. Corp.*, No.12-CV-4235 ADS AKT, 2013 WL 1898954, at *9 (E.D.N.Y. May 7, 2013), for the proposition that

31

"[t]he application of the mootness exception is essential to prevent the race to the courthouse from entirely circumventing and stymieing the class action mechanism." *Id.* at *28 . Judge Skretny appeared to accept this argument.

But *Thomas* is distinguishable for two reasons. First, in Thomas' amended complaint, served after the defendant had made the Rule 68 offer of judgment, Thomas advanced new claims that were not included in the original complaint. The pending offer of judgment did not address the new claims. Second, between the original offer of judgment and the hearing concerning the motion to dismiss the amended complaint, Thomas actually moved for class certification. In this case, no dispute exists that the Rule 68 offer of judgment is more than sufficient to satisfy all of Tanasi's claimed damages. And, despite the passage of two years since he filed his complaint, Tanasi has not moved to certify his class. *Thomas* simply is not dispositive of the present case, as Judge Skretny should have recognized.

The Supreme Court also rejected Symczyk's argument that the public policy underlying the collective action provision justified keeping the case alive. Symczyk had argued that "the purposes served by the FLSA's collective-action provisions – for example, efficient resolution of common claims and lower individual costs associated with litigation – would be frustrated by defendants' use of Rule 68 to 'pick off' named plaintiffs before the collective-action process has run its course." *Id.* She relied on the statement in *Roper* that "allowing defendants

32

to 'pick off' party plaintiffs before an affirmative ruling was achieved 'would frustrate the objectives of class actions.'"  Finding these arguments unpersuasive, the Court characterized that statement in *Roper* as mere "*dicta*" and even questioned *Roper*'s "continuing validity."  *Id.* at 1532.[9]  Judge Skretny should have reached similar conclusions.

**B.  The Reasoning of *Genesis HealthCare* Also Applies in Rule 23 Class Actions**

**1.  The "Fundamental Differences" Between the FLSA and Rule 23 Concern the Certification Process and Are Irrelevant in This Case**

In the course of analyzing Symczyk's arguments, perhaps even as *dicta*, the Supreme Court remarked, "Rule 23 actions are fundamentally different from collective actions under the FLSA."  133 S. Ct. at 1529.  The District Court in this action and other district courts have taken that phrase out of context and concluded that the reasoning of *Genesis HealthCare* does not apply at all in Rule 23 class actions.[10]  Such a conclusion is not indicated by *Genesis HealthCare*.

---

[9] The Court also observed that this portion of *Roper* likely was abrogated by its subsequent holding that an interest in recovering attorneys' fees is "insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."  *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990).

[10] *See, e.g.*, *Craftwood II, Inc. v. v. Tomy Int'l, Inc.*, No. SA CV 12-1710 DOC, 2013 WL 3756485, at *3 (C.D. Cal. July 15, 2013) ("*Genesis* is distinguishable because it considered a claim filed as a collective action under Section 16(b) ... of the FLSA ....  A ruling in the context of a collective action does not directly apply to a class action.").

The Supreme Court made its statement concerning the distinction between procedures in the context of rejecting Symczyk's reliance on *Sosna* and its progeny, because those were cases in which Rule 23 class certification proceedings ***had actually been conducted***:

> [E]ssential to our decisions in *Sosna* and *Geraghty* was the fact that a putative class acquires an independent legal status ***once it is certified*** under Rule 23. Under the FLSA, by contrast, "conditional certification" does not produce a class with an independent legal status, or join additional parties to the action.

133 S. Ct. at 1530 (emphasis added). When properly read in context, therefore, the "fundamental differences" between FLSA collective actions and Rule 23 class actions indicated by the Court relate to the legal consequences of certification, and not to pre-certification proceedings. *See also Genesis HealthCare*, 133 S. Ct. at 1527 n. 1 ("there are significant differences between certification under Federal Rule of Civil Procedure 23 and the joinder process under § 216(b) [of the FLSA]").

The major difference between an FLSA collective action and a Rule 23 class action is that, in an FLSA collective action, only plaintiffs who affirmatively opt in are bound by the judgment. In a typical Rule 23 class action seeking monetary damages, potential class members are bound by the judgment unless they affirmatively opt out. *Compare* 47 U.S.C. § 216(b) *with* Fed. R. Civ. P. 23(c)(2)(B). *See also Smith v. T-Mobile USA Inc.*, 570 F.3d 1119, 1123 (9th Cir.

2009) (noting the "key difference between a Rule 23 opt out class action and a FLSA opt-in collective action").

Understood in context, the "fundamental difference" between a Rule 23 class action and an FLSA collective action manifests only after initial certification is granted. In the Rule 23 context, once certification is granted, unnamed class members have an interest in the case, a "personal stake." A Rule 68 offer made solely to the named plaintiff after certification should not moot the class claims as the individual class members are parties with Article III standing. By contrast, in the FLSA context, even preliminary certification will not join the absent potential collective action members – only their affirmative opt-in will join them as parties. A Rule 68 offer made solely to the named plaintiff prior to such joinder of absent class members can moot the case. Only the named plaintiff has Article III standing until others opt in.

But the distinction between FLSA opt-in collective actions and Rule 23 opt-out class actions is irrelevant in cases, such as this one, where a Rule 23 certification motion has never been filed. Prior to the filing of a certification motion, unnamed putative class members do not have an independent legal interest in the case or controversy. They occupy the same position as those persons who had yet to opt in to Symczyk's FLSA action in *Genesis HealthCare*. They have no standing.

35

In *Genesis HealthCare*, the Supreme Court emphasized that "nothing in the nature of FLSA actions precludes satisfaction – and thus the mooting – of the individual's claim before the collective-action component of the suit has run its course." 133 S. Ct. at 1529 n. 4. The same is true of a Rule 23 class action before a class has been certified. Absent putative class members are not parties to the litigation. They have no "personal stake."

As originally stated by Chief Justice Marshall, any possible dispute between the Bank and the absent putative class members "becomes a case" for purposes of Article III only when "a party … asserts his rights in the form prescribed by law," *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738, 819 (1824) (quoted in *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 175-76 (Scalia, J., dissenting)). Simply, putative class members in Rule 23 class actions have no rights as parties prior to certification of a class. *See Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011) (Kagan, J.) ("[W]e have further held that an unnamed member of a *certified* class may be 'considered a "party" for the [particular] purpos[e] of appealing' an adverse judgment. *Devlin v. Scardelletti,* 536 U.S. 1, 7, 122 S. Ct. 2005, 153 L. Ed. 2d 27 (2002). But as the dissent in *Devlin* noted, no one in that case was 'willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation *before the class is certified.*' *Id.,* at 16, n. 1, 122 S. Ct. 2005 (opinion of SCALIA, J.).") (emphasis by the Court). *See*

*also Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1346 (2013) ("a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified"); *Damasco v. Clearwire Corp.*, 662 F.3d at 896 ("To allow a case, not certified as a class action and with no motion for class certification even pending, to continue in federal court when the sole plaintiff no longer maintains a personal stake defies the limits on federal jurisdiction expressed in Article III …. That the complaint identifies the suit as a class action is not enough by itself to keep the case in federal court. Even when a 'complaint clearly and in great detail describes the suit as a class action suit,' if the plaintiff does not seek class certification, then 'dismissal of the plaintiff's claim terminates the suit.'") (citations omitted).

To summarize, for three principal reasons, the underlying facts presented in this appeal resemble those presented in *Genesis HealthCare*. The Supreme Court's decision should control.

First, Tanasi has "no personal stake" in this litigation. The Bank's Rule 68 offer of judgment affords him "complete relief." Tanasi "retains no personal interest in the outcome of the litigation." *Genesis HealthCare*, 133 S. Ct. at 1529. As the Supreme Court stated, "The mere presence of collective action allegations in the complaint cannot save the suit from mootness once the individual claim is

satisfied." *Id.* Tanasi, the named plaintiff, no longer has a "live" claim. *Id.* at 1530.

Second, no other proposed class member has come forward, and no other claimants have been identified. The "class of unnamed persons described [in the complaint … has a] legal status separate from the interest asserted by the named plaintiff." *Id.* Tanasi can no longer be a representative plaintiff, as his interests differ markedly from those of the unnamed prospective class members.

Third, the damages claims presented in the instant litigation are not of the "inherently transitory" nature contemplated in the cases cited below by Tanasi. Other alleged similarly situated account holders remain to challenge the Bank's conduct. Their individual interests have not expired. *Id.* at 1530-31. Nor is the Bank's claimed unlawful conduct "effectively unreviewable." *Id.* at 1531.

### 2. Numerous Courts Agree that *Genesis HealthCare* Applies in Rule 23 Class Actions

Many district courts have recently concluded that *Genesis HealthCare* does apply to Rule 23 class actions and is not limited to FLSA actions. In April, the Southern District held in *Franco v. Allied Interstate LLC*, *supra*, that the defendant's Rule 68 offer of complete relief to the named plaintiff mooted the entire class action seeking damages under the Fair Debt Collection Practices Act ("FDCPA"). In *Franco*, the plaintiff even filed a class certification motion after he had rejected the defendant's Rule 68 offer which would have fully satisfied his

claims.  Citing *Genesis HealthCare*, the Southern District dismissed the action for

lack of subject matter jurisdiction:

> The Court is mindful that several courts have nonetheless
> denied motions to dismiss actions as moot based upon the
> "relation back" doctrine, which hinges on "transitory"
> circumstances.  Those courts have also noted the Supreme
> Court's concern in … *Roper* … that defendants could "pick
> off" plaintiffs by offering judgment before class certification,
> thus frustrating the objective of class actions …. However, for
> substantially the same reasons as the Supreme Court stated in
> *Genesis HealthCare Corp.*, the "relation back" doctrine and the
> "picking off" concern are inapposite here ….
>
> *            *            *
>
> The Court is mindful that FLSA collective actions are subject to
> less strict principles than Rule 23 class actions, because
> plaintiffs must opt in to FLSA actions, unlike class actions ….
> However, that distinction is irrelevant here.

2014 U.S. Dist. LEXIS 47077, at *9-10, 12.

Last year, the Southern District of Florida similarly dismissed a Rule 23

TCPA class action as moot based upon *Genesis HealthCare.  See Keim v. ADF

MidAtlantic, LLC*, No. 12-80577, 2013 U.S. Dist. LEXIS 98373 (S.D. Fla. July 15,

2013).  Rejecting the same argument made by Tanasi that *Genesis HealthCare* is

restricted to FLSA collective actions, the Court stated:

> That *Genesis* dealt with an FLSA collective action and its
> corollary "conditional" class certification … does not support
> an attempt to distinguish it materially from the facts of this
> case, which deals with traditional Rule 23 class certification in
> a TCPA case: both cases present a situation where a lone
> plaintiff was offered full relief before a class acquired
> independent legal status.  In fact, any distinction between an

39

> FLSA conditional certification and a Rule 23 traditional certification … arguably cuts in favor of Defendants ….

*Id.* at \*19-20 & n. 10. Citing *Genesis HealthCare*, the Court concluded that "filing a 'class action' complaint does not prevent a claim from being rendered moot where the sole plaintiff is offered full relief before he moves for class certification." *Id.* at \*27. Rejecting the attempted distinction Judge Skretny accepted, the Court dismissed the action for lack of subject matter jurisdiction. *Id.* at \*33-34; *accord Delgado v. Collecto, Inc.*, No. 8:13-cv-2511, 2013 WL 6332748, at \*3 (M.D. Fla. Dec. 5, 2013) (following *Keim* and dismissing Rule 23 Fair Debt Collection Practices Act class action as moot).

The Western District of Texas has also concluded that the reasoning of *Genesis HealthCare* applies to Rule 23 class actions. In *Masters v. Wells Fargo Bank South Central*, No. A-12-CA-376-SS, 2013 U.S. Dist. LEXIS 101171 (W.D. Tex. July 11, 2013), the court dismissed a TCPA class action after concluding that Wells Fargo's Rule 68 offer of judgment mooted the plaintiff's individual and class action claims. Invoking *Genesis HealthCare*, the Court determined that the plaintiff's class action claim under the TCPA was also moot, observing:

> In *Genesis,* the United States Supreme Court held "the mere presence of collective-action allegations in the complaint cannot save [a Fair Labor Standards Act] suit from mootness once the individual claim is satisfied." 133 S. Ct. at 1529. Although the Court recognized Rule 23 class actions "are fundamentally different from collective actions under the FLSA," it went on to review (and distinguish) the precise Rule

40

> 23 cases Masters relies on in support of his argument. *See id.* at
> 1529-32 (discussing *U.S. Parole Comm'n v. Geraghty*, 445
> U.S. 388 (1980); *Deposit Guaranty Nat'l Bank v. Roper*, 445
> U.S. 326 (1980); and *Sosna v. Iowa*, 419 U.S. 393 (1975)).

2013 U.S. Dist. LEXIS 101171, at *14-15. Applying *Genesis HealthCare* in the

Rule 23 context, the Western District of Texas concluded that prior to class

certification, the named plaintiff in a Rule 23 class action has no interest in the

class claims; claims for money damages are not inherently transitory; and a named

plaintiff whose individual claim is mooted by a Rule 68 offer of judgment has no

personal interest in representing putative class members. *Id.* at *17-18; *see also*

*Hooks v. Landmark Indus.*, No. H-12-0173, 2014 U.S. Dist. LEXIS 89223, at *24

(S.D. Tex. July 1, 2014) ("Although Genesis was an FLSA case, the Supreme

Court's reasoning that the nature of damages claims do not lend themselves to

application of the relation-back doctrine is equally applicable in the Rule 23

context"); *Bank v. Spark Energy Holdings LLC*, No. 4:11-CV-4082, 2013 U.S.

Dist. LEXIS 150733, at *38 (S.D. Tex. Oct. 18, 2013) (Rule 68 offer that fully

satisfies the named plaintiff's claims and is made before a class certification

motion has been filed moots the putative class claims); *Stein v. Buccaneers Ltd.*

*P'ship*, No. 8:13-cv-02136, 2013 WL 7045328 (M.D. Fla. Oct. 24, 2013)

(dismissing putative TCPA class action as moot). These new decisions are better

reasoned.

### 3. The Histories of Rule 23 and Rule 68 Confirm that This Entire Action Should Be Dismissed as Moot

As discussed previously, *Genesis HealthCare* held that "nothing in the nature of FLSA actions precludes satisfaction – and thus the mooting – of the individual's claim before the collective-action component of the suit has run its course." 133 S. Ct. at 1529 n. 4. The same statement could have been made about Rule 23; nothing in Rule 23 precludes dismissal of Tanasi's putative class action.

Rule 23 was amended in 2003 to clarify that, prior to class certification, there is no class to protect insofar as settlement of the named plaintiff's individual claim is concerned. Under present Rule 23(e), a named plaintiff can resolve his individual claims prior to the filing of a class certification motion without court approval.[11] Indeed, putative class actions routinely settle on an individual basis before class certification proceedings commence. Nothing in Rule 23 would prevent a plaintiff who has not filed a class certification motion from resolving his own individual claims. *See also Kaszovitz v. Qiao Xing Universal Resources, Inc.*, No. 12 Civ. 3745 (RWS), 2012 U.S. Dist. LEXIS 111781 (S.D.N.Y. Aug. 7, 2012)

---

[11] The Committee Notes to the 2003 amendments explain: "Rule 23(e)(1)(A) resolves the ambiguity in former Rule 23(e)'s reference to dismissal or compromise of "a class action." That language could be – and at times was – read to require court approval of settlements with putative class representatives that resolved only individual claims. *See* Manual for Complex Litigation Third, §30.41. The new rule requires approval only if the claims, issues, or defenses of a *certified* class are resolved by a settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e) (emphasis added).

(named plaintiff can voluntarily dismiss class action without court approval before certification).  Accordingly, nothing in Rule 23 precludes the dismissal of a named plaintiff's claims that have been mooted by a Rule 68 offer that fully satisfies the claims and was made prior to the filing of a class certification motion.

Moreover, it is unclear how Rule 23 could be read differently, as it is a rule of civil procedure.  The rule certainly cannot be read to overcome the constitutional requirements of Article III.  The Rules Enabling Act, 28 U.S.C. § 2072, specifies that the Federal Rules – including Rule 23 – "shall not abridge, enlarge, or modify any substantive right."  Before a class has been certified, the fact that a plaintiff styled his complaint as a putative class action cannot alter substantive constitutional principles regarding mootness.  As the Supreme Court stated in *Roper*, "the right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims.  Should these substantive claims become moot in the Art. III sense, by settlement of all personal claims for example, the court retains no jurisdiction over the controversy of the individual plaintiffs."  445 U.S. at 332.[12]  Contrary to Tanasi's assertions, the Bank's position regarding mootness is well grounded.

_____

[12] In *Genesis HealthCare*, the Supreme Court rejected Symczyk's argument that her claims were not moot because she had a sufficient personal stake in the case due to the "statutorily created collective-action interest in representing other similarly situated employees under § 216(b)."  133 S. Ct. at 1530.

Further undercutting Tanasi's position, in 1983 and 1984 Congress considered amending Rule 68 to exclude Rule 23 class actions but decided not to do it. The proposed amendments to Rule 68 provided in relevant part that "[t]his rule shall not apply to class or derivative actions under Rules 23, 23.1, and 23.2." *See Weiss v. Regal Collections*, *supra*, 385 F.3d at 344 n. 12. Congress' rejection of the proposed amendments confirms that it intended Rule 68 to apply to Rule 23 class actions such as this action. As the Supreme Court held in *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 672-73 (2012), when Congress wants to create an exception, it knows how to do so and does so expressly. There is no exception in Rule 68 for class actions, and there is no logical reason why the Supreme Court's reasoning in *Genesis HealthCare* should not apply fully to Rule 23 class actions, such as the present case, where a class certification motion has not been filed.

### 4. Dismissal Will Not Impair the Rights of the Putative Class Members

Decisions of this Court in analogous contexts fully support this conclusion. This Court has held that a district court may dispose of the named plaintiff's individual claims on a motion to dismiss the complaint filed by the defendant before class certification is decided. *See Christensen v. Kiewit-Murdock Invest. Corp.*, 815 F.2d 206 (2d Cir. 1987), *cert. denied*, 484 U.S. 908 (1987) (holding that district court did not abuse its discretion in reserving decision on plaintiffs' class

certification motion pending disposition of defendants' motion to dismiss). As support for its holding, the Court cited *Wright v. Schock*, 742 F.2d 541 (9th Cir. 1984). *Wright* held that a district court may dispose of a named plaintiff's claims on summary judgment, before class certification proceedings requiring extensive discovery are undertaken, because "[p]utative class members remain entirely free to file suit against the banks and title companies .... [T]hey do not face a statute of limitations problem because the bringing of a class action tolls the statute of limitations as to all asserted members of the class." *Id.* at 545 (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983); *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)); *accord Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1013 n. 1 (9th Cir. 2000) ("In the Anderson case, Pirelli's motion for summary judgment was filed against an uncertified class of plaintiffs. When a motion is maintained against an uncertified class, only the named plaintiffs are affected by the ruling. There is no res judicata effect as to unnamed members of the purported class …. Thus, the Appellants in the instant case remained free to assert their rights against Pirelli despite the Anderson ruling.").

If a named plaintiff's individual claims in a putative class action can be adjudicated on the merits through a dispositive motion before class certification proceedings are held, there is no reason why they cannot be dismissed as moot before a class certification motion has been filed. In either case, no harm or

prejudice results to the unnamed putative class members, because they are not bound by the ruling and are free to bring their own actions.  Prior to certification of a class, "potential class members may leave the putative class at will."  *In re PaineWebber Ltd. P'ship Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).  *See also Weight Watchers of Phila., Inc. v. Weight Watchers Int'l, Inc.*, 455 F.2d 770, 775 (2d Cir. 1972) (defendant did not violate Rule 23(e) by negotiating settlement with putative class members before a class was certified).

### 5.    Public Policy Also Dictates that This Action Be Dismissed as Moot

This Court should not view the issue presented in this appeal in isolation but rather in the context of ongoing class action reform.   The formal findings necessitating the enactment of CAFA included, *inter alia*:

> By now, there should be little debate about the numerous problems with our current class action system.   A mounting stack of evidence … demonstrates that abuses are undermining the rights of both plaintiffs and defendants.  [S. Rep., p. 4.]

> \*                \*                \*

> To make matters worse, current law enables lawyers to "game" the procedural rules …. [*Id.*, pp. 4, 10.]

> \*                \*                \*

> [Current procedures] have facilitated a parade of abuses.  [*Id.*, p. 6.]

> \*                \*                \*

46

... Judges are lax about following the strict requirements of Rule 23 … which are intended to protect the due process rights of both unnamed class members and defendants. [*Id.*, p. 14.]

\*         \*         \*

First, lawyers, not plaintiffs, may benefit most from settlements. Second, corporate defendants are forced to settle frivolous claims to avoid expensive litigation, thus driving up consumer prices. [*Id.*]

\*         \*         \*

Because class actions are such a powerful tool, they can give a class attorney unbounded leverage, particularly in jurisdictions that are considered plaintiff-friendly. Such leverage can essentially force corporate defendants to pay ransom to class attorneys by settling – rather than litigating – frivolous lawsuits. [*Id.*, p. 20.]

\*         \*         \*

Judge Richard Posner of the United States Court of Appeals for the Seventh Circuit has explained, "Certification of a class action, even one lacking merit, forces defendants to stake their companies on the outcome of a single jury trial, or be forced by fear of the risk of bankruptcy to settle even if they have no legal liability …. [Defendants] may not wish to roll these dice. That is putting it mildly. They will be under intense pressure to settle." Hence, when plaintiffs seek hundreds of millions of dollars in damages, basic economics can force a corporation to settle the suit, even if it is meritless and has only a five percent chance of success. [*Id.*, p. 21 (citation omitted)].

2005 WL 627977, at \*5, 7, 11, 14, 15, 21. Since CAFA's enactment, the federal courts have endeavored to more vigorously enforce Rule 23.

The Supreme Court's recent decisions involving other class action issues also support the view that the right to pursue class litigation is not absolute.

Rather, reasonable restrictions limiting the availability of class litigation seem to be encouraged. In *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013), for example, the Supreme Court upheld a contractual provision requiring arbitration and barring class litigation. Describing Rule 23 as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," the Court found no "entitlement to class proceedings for the vindication of" rights. *Id.* at 2309. *See also In Re Whirlpool Corporation Front Loading Washer Products Liability Litigation*, 722 F. 3d 838 (6th Cir. 2013). Notwithstanding Tanasi's suggestions to the contrary, the right to pursue class litigation is not absolute.

To fall within the exception allowing class treatment, a party seeking to maintain a class must affirmatively demonstrate strict compliance with Rule 23. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011). The Supreme Court has instructed:

> The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members. Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements – numerosity, commonality, typicality, and adequate representation – effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.

48

*Wal-Mart Stores*, 131 S. Ct. at 2550 (citations and internal quotation marks omitted).

Here, the named plaintiff has never made a motion to certify the class. The Bank advanced its offer of judgment prior even to answering. While the present issue need not directly address certification, certification is implicated. As the Bank has extensively argued, the offer of judgment moots Tanasi's claim. Because Tanasi no longer has a claim, he cannot possibly be a representative plaintiff. He no longer has an injury, which distinguishes him from the unnamed class members.

## IV. Tanasi's Putative Class Action Should Be Dismissed as Moot Following the Entry of Judgment in Favor of Tanasi Individually in Accordance with the Bank's Rule 68 Offer

The District Court erred in denying the Bank's motion to dismiss, because its controlling rationale, based on cases pre-dating *Genesis HealthCare*, has been undercut or abrogated by *Genesis Healthcare*. This Court should remand the action to the District Court with the direction that the case be dismissed for lack of subject matter jurisdiction after judgment has been entered in favor of Tanasi individually in accordance with the Bank's Rule 68 offer.

### A. The Bank's Unaccepted Offer of Complete Relief Mooted Tanasi's Individual Claims

As discussed in Section II, the law in this Circuit is clear that an unaccepted offer of complete relief to the plaintiff in a non-class action moots the plaintiff's

individual claims and requires the dismissal of the action after judgment has been entered against the defendant in accordance with its offer.

## B. Because His Individual Claims Are Moot, Tanasi Cannot Represent a Class

Because he no longer has a personal stake in this litigation going forward, Tanasi has no standing to represent the alleged class. Generalized grievances cannot satisfy Article III. The party seeking relief "must be himself among the injured." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992).

The Supreme Court has long recognized that a named plaintiff cannot represent a putative class absent an individualized injury sufficient to demonstrate the existence of an Article III case or controversy. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class"); *Simon v. Eastern Kentucky Welfare Rights Orgs.*, 426 U.S. 26, 40 n. 20 (1976) ("[t]hat a suit may be a class action … adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent'") (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). "'[A] class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time

the complaint is filed and at the time the class is certified.'" *Swan v. Stoneman*, 635 F.2d 97, 102 n. 6 (2d Cir. 1980), quoted in *Franco*, 2014 U.S. Dist. LEXIS 47077, at *13.

In this case, the Bank's Rule 68 offer fully satisfies Tanasi's claims and includes reasonable attorneys' fees associated with Tanasi's individual claim.  By definition, he no longer possesses the same interest or suffers the same injury as the putative class members. *See Dukes*, 131 S. Ct. at 2550.  When a case ceases to affect "'the legal relations of parties having adverse legal interests,'" the case becomes moot.  "[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the cases before them." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).

## C.     The Putative Class Claims Are Also Moot

Judge Skretny found that *Sosna* and its progeny supported his conclusion not to dismiss Tanasi's class action as moot.  But the Supreme Court in *Genesis HealthCare* rejected the application of those earlier decisions where a certification motion has not been filed.  In this case, as in *Genesis HealthCare*, no certification motion has been filed. *See Genesis Healthcare*, 133 S. Ct. at 1529 ("the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied").

As held in *Genesis HealthCare*, the rationale underlying the "inherently transitory," "relation back" and "pick off" theories simply does not apply where, as here, the named plaintiff has not filed a certification motion. The Supreme Court held that the *Sosna* line of cases was "inapplicable" where the Rule 68 offer fully satisfied the named plaintiff's claims and preceded the filing of a certification motion. 133 S. Ct. at 1529.

In *Genesis HealthCare*, the Supreme Court openly rejected application of the "relation back," "inherently transitory," and "pick-off" theories of the *Sosna* line of cases to claims seeking damages. The present action is strictly an action for damages. No injunctive relief is sought. New Alliance engaged in all of the alleged wrongdoing, but New Alliance ceased to exist when it merged into First Niagara effective April 15, 2011. In addition, Tanasi closed his account prior to the merger. There is no continuing activity to enjoin. As in *Genesis HealthCare*, the putative class members (who do not have party rights in this action because a class has not been certified) will not be harmed or prejudiced by the dismissal of the named plaintiff's claim. They "remain free to vindicate their rights in their own suits. They are no less able to have their claims settled or adjudicated following respondent's suit than if her suit had never been filed at all." *Genesis HealthCare*, 133 S. Ct. at 1531.

52

Judge Skretny misread *Genesis HealthCare* in concluding that its *ratio decidendi* did not apply in Rule 23 class actions. The reasoning of *Genesis Healthcare* does apply in Rule 23 class actions, such as the present case, because the "fundamental difference" between an FLSA collective action and a Rule 23 class action relates to the certification process itself. That difference is irrelevant here since a class certification motion has not even been filed.

### D. A Desire for Class Action Attorneys' Fees Does Not Create Article III Standing

The Bank's Rule 68 offer includes the payment of Tanasi's reasonable legal fees through the date of the offer. Any desire of Tanasi's lawyers to keep this case alive, so that they can generate additional class action fees, does not create a "case" or "controversy" within the meaning of Article III. *Lewis*, 494 U.S. at 480; *see also Diamond v. Charles*, 476 U.S. 54, 70-71 (1986) ("The fee award is wholly unrelated to the subject matter of the litigation, and bears no relation to the statute whose constitutionality is at issue here …. [T]he mere fact that continued adjudication would provide a remedy for an injury that is only a byproduct of the suit itself does not mean that the injury is cognizable under Art. III."); *Ray Haluch Gravel Co. v. Central Pension Fund*, 134 S. Ct. 773, 781 (2014) ("an unresolved issue of attorneys' fees for the litigation does not prevent judgment on the merits from being final"); *Valdez v. Cox Communications Las Vegas Inc.*, 557 F. App'x 655, 657 (9th Cir. 2014) (a plaintiff's effort to obtain attorneys' fees following

voluntary settlement did not cause him to maintain a continuing personal stake in litigation).

Congress actually designed Rule 68 to foster and encourage settlement. Rule 68's public policy implications are perhaps even more applicable here, where the Bank faces the inevitable prospect of costly e-discovery. To the extent that Tanasi accuses the Bank of attempting to "pick off" the named plaintiff to foreclose the class, as if the Rule 68 offer were designed to frustrate equity, Tanasi's hands are not entirely clean, either. Tanasi styled this litigation, at least in part, to force defendants to incur the considerable expenses of e-discovery. Tanasi's e-discovery obligations, in the event the case proceeds, are minimal. The Bank's e-discovery costs are exponentially higher, especially if a class is ultimately certified. Given this economic reality, the Bank has evaluated its potential exposure. The Eastern District has noted:

> As explained by the Supreme Court, the plain purpose of Rule 68 is to encourage settlement and avoid litigation …. The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits. Though plaintiff's arguments [that the Rule 68 offer was designed to pick off the named plaintiff, thereby frustrating the public policy underlying Rule 23] may have some validity after class certification, they do not apply to the present case. No class has been certified and no motion has been made for certification. Therefore, nothing prevents the defendant from attempting to facilitate settlement by making a pre-certification Rule 68 offer of judgment.

54

*Ambalu v. Rosenblatt*, *supra*, 194 F.R.D. at 452 (citations and internal quotation marks omitted). *See also Greif v. Wilson, Elser*, *supra*, 258 F. Supp. 2d at 161 (rejecting a plaintiff's claim that defendant's Rule 68 offer of judgment made prior to class certification constituted an effort to "buy off the named plaintiff," the Eastern District compelled plaintiff to accept the offer of judgment).

## <u>CONCLUSION</u>

For these reasons, Appellants New Alliance Bank and First Niagara Financial Group, Inc. respectfully request that the Court hold that this case is moot, that it reverse and remand with direction that the case be dismissed for lack of subject matter jurisdiction after judgment has been entered in favor of Tanasi individually in accordance with the Bank's Rule 68 offer, and that it grant such other and further relief as is just and proper.

Dated: August 15, 2014

Respectfully submitted,

**HODGSON RUSS LLP**
By: /s/ Hugh M. Russ, III
Hugh M. Russ III
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000 (Telephone)
(716) 849-0349 (Facsimile)
Email: hruss@hodgsonruss.com

OF COUNSEL:
Alan S. Kaplinsky, Esquire
Mark J. Levin, Esquire
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
(215) 665-8500 (Telephone)
(215) 864-8999 (Facsimile)
Email: kaplinsky@ballardspahr.com
Email: levinmj@ballardspahr.com

Attorneys for Defendants - Appellants New Alliance Bank
and First Niagara Financial Group, Inc.

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) as this brief contains 13,455 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2012, Time New Roman, 14-point font.

Respectfully submitted,

Dated: August 18, 2014

**HODGSON RUSS LLP**
By: <u>/s/ Hugh M. Russ, III</u>
Hugh M. Russ III
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000 (Telephone)
(716) 849-0349 (Facsimile)
Email: hruss@hodgsonruss.com

**Special Appendix**

i

## TABLE OF CONTENTS

**Page**

Decision and Order of the Honorable William M.
    Skretny, dated August 26, 2013 ............................ SPA-1

Decision and Order of the Honorable William M.
    Skretny, dated December 17, 2013 ....................... SPA-18

SPA-1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PATRICK TANASI, on behalf of himself and
others similarly situated,

              Plaintiff,

    v.

NEW ALLIANCE BANK and FIRST
NIAGARA FINANCIAL GROUP, INC.,

              Defendants.

**DECISION AND ORDER**
12-CV-646S

## I.  INTRODUCTION

Seeking to represent a class of similarity situated individuals, Plaintiff Patrick Tanasi

brings this diversity action against Defendants New Alliance Bank, and its successor-in-

interest, First Niagara Financial Group, Inc. (collectively "the Bank").

All of Tanasi's five claims – those for  conversion, money had and received, breach

of covenant of good faith and fair dealing, unconscionability, and unjust enrichment – stem

from the Bank's alleged practice of re-ordering debit (or "point-of-sale") transactions from

the highest transaction amount to the lowest amount. Tanasi, who has not yet moved for

class certification, alleges that instead of processing the debit transactions in chronological

order as they occurred, the Bank delayed processing the transactions and re-ordered them

in this high-to-low fashion in an attempt to maximize overdraft fees.

The Bank moves to dismiss the case on essentially two grounds. It first  argues that

its offer of judgment, made under Federal Rule of Civil Procedure 68 in July of 2012,

satisfied all of Tanasi's alleged damages and thus moots the entire case. Alternatively, it

argues that even if the offer of judgment did not moot the case, Tanasi has failed to state a cognizable claim.

The Bank also contends that if this case were to proceed, account holders who are now subject to its class-action-waiver provision, which was instituted sometime after the merger, should be excluded from the putative class.

For the following reasons, the Bank's motion on mootness grounds is denied, its motion on the merits is granted in part and denied in part, and its motion with respect to the waiver is deferred.

## II. BACKGROUND

### A.      Facts[1]

Patrick Tanasi is a Connecticut resident who maintained a personal checking account with New Alliance Bank until it merged with First Niagara. (Compl., ¶ 11.)[2] Before the merger, New Alliance was a Delaware corporation with its principal place of business in Connecticut. It provided retail banking services to "tens of thousands of consumers" throughout Connecticut and Massachusetts. (Id., ¶ 12.) As part of its operations, it issued debit cards to its customers – including Tanasi. (Id.)

Customers like Tanasi could use these debit cards, also called check or ATM cards, to withdraw money from ATMs or make purchases.  When customers overdrew their

_____

[1]Facts alleged in the complaint – but not labels or legal conclusions – must be accepted as true for the purposes of resolving this motion. See Ashcroft v. Iqbal, 556 U.S. 662, 668, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

[2]According to the complaint, on April 15, 2011, New Alliance became a wholly-owned subsidiary of First Niagara, a Delaware corporation with its principal offices Buffalo, N.Y.  (Compl., ¶ 15.) First Niagara is sued only in its capacity as successor-in-interest to New Alliance. There are no independent allegations against it.

accounts using their cards, New Alliance would charge them a $33.00 overdraft fee. (Id., ¶ 7.) Tanasi alleges that, regardless of the type of transaction for which the card was used, the Bank was "notified instantaneously" when it was used and had the option to accept or decline the transaction immediately. (Id., ¶ 19.) But instead of acting on the transaction immediately, the Bank would delay, employing sophisticated software to order transactions from the highest amount to the lowest amount. (Id., ¶ 20.) This procedure increased the potential frequency of overdrafts, and by extension, increased the amount of overdraft fees the Bank could charge.

Tanasi provides the following example: If a customer whose account had a $50 balance made five transactions – four $10 transactions and a subsequent $100 transaction – the Bank would re-order the debits from largest to smallest, posting the larger $100 transaction first. This re-ordering would result in a total of five overdraft transactions, as opposed to just one if the transactions were processed in chronological order. (Id., ¶ 21.)

**B.    Procedural History**

Tanasi commenced this action by filing a complaint in this Court on July 9, 2012. The Bank then filed the current motion to dismiss on August 9, 2012. At the Bank's request, this Court then permitted additional briefing in light of the Supreme Court's decision in  Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013). That briefing concluded on May 13, 2013, at which time this Court took the motion under consideration.

### III.  DISCUSSION

**A.      Motion to Dismiss Standard – Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, 493 F.3d at 98. Legal conclusions, however, are not afforded the same presumption of truthfulness. See Iqbal, 556 U.S. at 678 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 678; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations must

nudge the claim "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570.

**B.      Rule 68 Offer of Judgment & Mootness**

Rule 68 permits "a party defending against a claim" to "serve on an opposing party an offer to allow judgment on specified terms." Fed. R. Civ. P. 68(a). There is no dispute that in July of 2012, nine days after this action was filed, the bank made such an offer to Tanasi, who did not accept it. (<u>See</u> Offer of Judgment, attached as Ex. B.; Docket No. 11-3.) The Bank argues that this offer, which was for $10,000 plus attorney fees and costs, and  which was undisputedly sufficient to satisfy Tanasi's full claim, renders the case moot under Article III of the United States Constitution.

"The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings." <u>Pitts v. Terrible Herbst, Inc.</u>, 653 F.3d 1081, 1086 (9th Cir. 2011) (citing <u>Burke v. Barnes</u>, 479 U.S. 361, 363, 107 S.Ct. 734, 93 L .Ed.2d 732 (1987)). In this Circuit it is settled that, if Tanasi were not seeking to represent a class, the Bank's complete offer of judgment would moot his claim and strip this Court of subject-matter jurisdiction over it. <u>See</u> <u>Doyle v. Midland Credit Mgmt., Inc.</u>, --- F.3d ----, No. 12-4555, 2013 WL 3242148 (2d Cir. June 28, 2013) (affirming prior holdings finding that an individual claim is rendered moot even if the complete offer of judgment is unaccepted, and clarifying that an offer need not even be in writing); <u>see also</u> <u>ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.</u>, 485 F.3d 85, 92–93 (2d Cir. 2007) (affirming Rule 12(b)(1) dismissal based on a tender of the maximum amount owed).  <u>But see</u> <u>Genesis Healthcare Corp. v. Symczyk</u>, 133 S. Ct. 1523, 1533, 185 L. Ed. 2d 636 (2013) (Kagen, J., dissenting) ("That thrice-asserted view [that an offer of judgment moots a case] is wrong, wrong, and wrong again."). The inverse

also appears to be settled: if the class were already certified, an offer to satisfy only the named plaintiff's claims would not moot the entire case because the class "acquire[s] a legal status separate from the interest asserted by [the named plaintiff]." Sosna v. Iowa, 419 U.S. 393, 399, 95 S. Ct. 553, 42 L. Ed.2d 532 (1975).

The Second Circuit has not, however, ruled whether such an offer moots a class-action complaint when the offer is made *before* class certification. Nor has the Supreme Court.

The Bank purports to find support for its proposition in the Supreme Court's recent majority decision in Genesis, but that case came before the Supreme Court as a putative collective action under the Fair Labor Standards Act ("FLSA"), not a putative Rule 23 class action, as is this case. This is a distinction with a difference, as the Genesis Court itself made clear: "Rule 23 actions are fundamentally different from collective actions under the FLSA." Id. at 1529. Although some of the Court's logic is arguably applicable to Rule 23 actions, and it is conceivable that the Court may eventually rule in like manner with respect to class actions, it has not done so yet. Instead, it carefully excluded class actions from its holding. Accordingly, like other courts, this Court finds it cannot look to Genesis for controlling guidance on this issue. See, e.g., Schlaud v. Snyder, 717 F.3d 451, 456 (6th Cir. 2013) (distinguishing Genesis "because it does not involve class certification under Rule 23"); Craftwood II, Inc. v. v. Tomy Int'l, Inc., No. SA CV 12-1710 DOC, 2013 WL 3756485, at *3 (C.D. Cal. July 15, 2013) ("Genesis is distinguishable because it considered a claim filed as a collection action under Section 16(b) . . . of the FLSA . . . . A ruling in the context of a collective action does not directly apply to a class action"); Singer v. Illinois State Petroleum Corp., No. C 9109, 2013 WL 2384314, at *1 (N.D. Ill. May 24, 2013)

-6-

("[T]he Genesis majority opinion took pains to distinguish the long-standing Supreme Court doctrine that had rejected mootness arguments" in Rule 23 contexts).

Although neither the Supreme Court nor the Second Circuit has addressed this issue, other Circuits have, and the Bank finds support for its position in Damasco v. Clearwire Corp., where the Seventh Circuit held that "[o]nce the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright . . . because he has no remaining stake." 662 F.3d 891, 895 (7th Cir. 2011). The court continued, "To allow a case, not certified as a class action and with no motion for class certification even pending, to continue in federal court when the sole plaintiff no longer maintains a personal stake defies the limits on federal jurisdiction expressed in Article III." Id. at 896.

But the Seventh is the only Circuit to have ruled in this manner, and the Third, Fifth, Ninth, and Tenth Circuits have all disagreed with this approach.[3] See Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1091–92 (9th Cir. 2011); Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239, 1249–50 (10th Cir. 2011); Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 920–21 (5th Cir. 2008); Weiss v. Regal Collections, 385 F.3d 337, 348 (3d Cir. 2004).

Each of these courts took a slightly different, though largely similar, approach in arriving at their shared conclusion. The Ninth Circuit, for its part, relied primarily on Supreme Court precedent, see County of Riverside v. McLaughlin, 500 U.S. 44, 111 S. Ct.

---

[3]It should also be noted that the practice in the Seventh Circuit, as proposed by the Damasco court itself, is simply for litigants to move for certification simultaneously with filing the complaint. Effectively then, there are zero circuits where a Rule 68 offer of judgment actually serves to moot a class-action complaint.

1661, 114 L. Ed. 2d 49 (1991), that "transitory" claims can relate back to the time of the filing of the complaint and  are not rendered moot by an offer of judgment. Pitts, 653 F.3d at 1090–91. The court explained that it saw "no reason to restrict application of the relation-back doctrine only to cases involving inherently transitory claims." Id. at 1091. It continued, "Where, as here, a defendant seeks to 'buy off' the small individual claims of the named plaintiffs, the analogous claims of the class—though not inherently transitory—become no less transitory than inherently transitory claims." Id.

The Tenth Circuit found that a "nascent interest attaches to the proposed class upon the filing of a class complaint such that a rejected offer of judgment for statutory damages and costs made to a named plaintiff does not render the case moot under Article III." Lucero, 639 F.3d at 1249. It found that a contrary rule would  waste judicial resources, and that "the timing of the class certification 'is not crucial.'" Id. (citing U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 398, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980)).

The Fifth Circuit, finding support in Sosna, 419 U.S. at 403 n. 11, also held that a class certification motion made after an offer of judgment would "relate back" to the time of the filing of the complaint. Therefore, if the class were eventually certified, an offer of judgment made only to the named plaintiff could not moot the entire class. Sandoz, 553 F.3d at 920–21.

The Third Circuit was the first to address this question and was the first to offer many of these rationales. It found class-action claims to be transitory and thus insulated from mootness when the defense attempts to pick off plaintiffs; it found the relation-back principle articulated in Sosna to be applicable; and it also raised policy concerns, finding that judicial resources would be wasted and the purpose of Rule 23 would be thwarted if

-8-

named plaintiffs could be picked off early in the litigation. Weiss, 385 F.3d at 347–49.

The Seventh Circuit's approach has, however, persuaded some district courts in this Circuit, creating a split. Compare Ambalu v. Rosenblatt, 194 F.R.D. 451, 453 (E.D.N.Y. 2000) ("If a named representative's claim becomes moot before class certification, the entire case is to be dismissed for lack of subject matter jurisdiction"); Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP, 258 F. Supp. 2d 157, 160–61 (E.D.N.Y. 2003) (applying reasoning of Ambalu); Tratt v. Retrieval Masters Creditors Bureau, Inc., No. 00 CV 4560, 2001 WL 667602, at *2 (E.D.N.Y. May 23, 2001) (Ambalu is "entirely dispositive"); Wilner v. OSI Collection Servs., Inc., 198 F.R.D. 393, 394–96 (S.D.N.Y. 2001) (agreeing with reasoning in Ambalu); Edge v. C. Tech Collections, Inc., 203 F.R.D. 85, 87–88 (E.D.N.Y. 2001) (agreeing with reasoning in Ambalu but finding "a case or controversy still remain[ed]" because Rule 68 offer of judgment did not offer the maximum amount recoverable under the FDCPA) with Thomas v. Am. Serv. Fin. Corp., No. 12-CV-4235 ADS AKT, 2013 WL 1898954, at *9 (E.D.N.Y. May 7, 2013) (offer of complete relief to named plaintiff does not moot the class); Herzlinger v. Nichter, No. 09 Civ. 00192(JSG)(PED), 2011 WL 4585251, at *8 (S.D.N.Y. Sept. 8, 2011), adopted by No. 7:09–CV–00192, 2011 WL 4575126, at *1 (S.D.N.Y. Oct. 3, 2011) (same); McDowall v. Cogan, 216 F.R.D. 46, 47–52 (E.D.N.Y. 2003) (same); Eckert v. Equitable Life Assurance Soc. of the U.S., 227 F.R.D. 60, 63–64 (E.D.N.Y. 2005) (same); Nasca v. GC Servs. Ltd. P'ship, No. 01CIV10127(DLC), 2002 WL 31040647, at *3 (S.D.N.Y. Sept. 12, 2002) (same); Schaake v. Risk Mgmt. Alternatives, Inc., 203 F.R.D. 108, 110–12 (S.D.N.Y. 2001) (same); White v. OSI Collection Servs., Inc., No. 01-CV-1343(ARR), 2001 WL 1590518, at *4 (E.D.N.Y. Nov. 5, 2001) (same).

SPA-10

Despite this disagreement, this Court finds the reasoning first articulated by the Third Circuit in Weiss, and echoed by three other Circuits and the majority of district courts in this Circuit, to be the most persuasive. In fact, the reasoning expressed by Judge McMahon of the Southern District of New York in Schaake, where the court ruled on a motion to dismiss under a similar procedural posture as this case, is especially relevant here. The Schaake court took guidance from the Third Circuit and offered essentially three now-familiar reasons for allowing a putative class action to proceed when a full offer of judgment has been made to the representative plaintiff.

First, it pointed to the Supreme Court's statement in Roper that

> [r]equiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.

Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 339, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980).   Such a policy would  "allow defendants to essentially opt-out of Rule 23, by allowing a defendant to avoid liability for class wide relief, which could be prevented by the mere service of a Rule 68 offer at the outset of the case." Schaake, 203 F.R.D. at 112.

Second, the court noted that "hinging the outcome" of a  motion to dismiss on the timing of a class certification motion "is not well-supported in the law nor sound judicial practice; it would encourage a 'race to pay off' named plaintiffs very early in the litigation, before they file motions for class certification." Id. (citing Liles v. Am. Corrective Counseling Servs., Inc., 201 F.R.D. 452, 455 (S.D. Iowa 2001)).

And third, the Schaake court distinguished cases like Ambalu, where the plaintiff

-10-

SPA-11

failed to make a class certification motion over a significant period of time. By contrast, the offer of judgment in <u>Schaake</u> was made only 32 days after the complaint was filed. The offer here was made even sooner: the Bank made its offer only nine days after Tanasi filed the complaint – "well before plaintiff could be reasonably expected to file [his] class certification motion." <u>Id.</u> at 112.

****

This is not to say that there are not compelling reasons to find differently. As courts like <u>Ambalu</u> point out, the "plain purpose of Rule 68 is to encourage settlement and avoid litigation." 194 F.R.D. at 453 (quoting <u>Marek v. Chesny</u>, 473 U.S. 1, 5, 105 S. Ct. 3012, 87 L. Ed. 2d 1 (1985)). That purpose is arguably frustrated when a defendant must make a Rule 68 offer to a putative, amorphous class to avoid all litigation. A rule to the contrary also has perhaps the most straightforward argument in its favor – that which was adopted by the Seventh Circuit: a class must be certified before it attains any legal status, and, therefore, if an individual's claim becomes moot before certification, there is nothing left for the court to adjudicate. Moreover, in <u>Genesis</u>, the Supreme Court could be seen to have backed away from its concern about "picking off" plaintiffs, calling this language "dicta" and noting that the <u>Roper</u> holding "turned on a specific factual finding that the plaintiffs' possessed a continuing personal economic stake in the litigation, even after the defendants' offer of judgment." <u>Genesis</u>, 133 S. Ct. at 1532. (Nonetheless, the <u>Genesis</u> Court was also careful to note that this dictum "was tethered to the unique significance of certification decisions in class-action proceedings," as opposed to collective actions. <u>Id.</u>)

But ultimately, without clear precedent, this Court finds the rationale outlined by the overwhelming majority of the circuit courts to be persuasive, and accordingly, it finds that

-11-

SPA-12

the Bank's offer of judgment to Tanasi did not moot his pre-certification class-action complaint.

## C.    Tanasi's Claims on the Merits[4]

Having determined that this action is not moot, this Court must turn to the Bank's arguments for dismissal on the merits.

### 1.    Breach of Covenant of Good Faith and Fair Dealing

In Connecticut, like most states, "every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Gaudio v. Griffin Health Servs. Corp., 249 Conn. 523, 564, 733 A.2d 197 (1999). "To constitute a breach of that covenant, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." Alexandru v. Strong, 81 Conn. App. 68, 81, 837 A.2d 875, 883 (2004). Bad faith, in turn, generally "implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Id. It "means more than mere negligence; it involves a dishonest purpose." Id.

Tanasi contends that the Bank's re-ordering system breached this duty. But "[a] claim for breach of the implied covenant of good faith and fair dealing must be based on

---

[4]The Agreement does have a choice-of-law provision, but that provision is limited to a section of the Agreement that is not relevant here. Thus, because the place of contracting, performance, and the domicile of the plaintiff is Connecticut, see Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 433 (2d Cir. 2012), this Court will apply Connecticut law.

-12-

the terms of the contract and cannot be applied to achieve a result contrary to [its] express terms." <u>Beckenstein Enterprises-Prestige Park, LLC v. Keller</u>, 115 Conn. App. 680, 693-94, 974 A.2d 764, 773 (2009). The Bank, therefore, relies exclusively on the Account Agreement between it and Tanasi, arguing that this Agreement expressly permits the Bank to re-order a customer's transactions.[5]

Section Five, entitled "Payment of Items" of the Agreement provides that:

> We [the Bank] may pay checks or other items charged against your [Tanasi's] account, including those payable to us, in any order we determine (for example, we may pay checks from largest to smallest, but may pay them before or after electronic debits to your account.) We may pay items in any order, even if paying a particular item results in an insufficient balance in your account to pay other items that could have been paid.

(Account Agreement, at 10 (parenthesis in original); attached as Ex. "A" to motion to dismiss; Docket No. 11-2.)

Immediately thereafter, Section Six, entitled "Insufficient Funds and Returned Items" provides:

> If there is not enough money in your account or if there is not enough money available in your account when a check, pre-authorized withdrawal, point-of-sale transaction, Visa Check Card Transaction, ATM withdrawal or any debit or withdrawal request is presented for payment, we may, at our option, do one of two things: (a) We may pay the item or allow the transaction, and your account will be overdrawn or (b) The item may be returned or the transaction refused without paying it. It is solely in our discretion whether to pay or return the item. In either case, your account will be assessed an overdraft fee.

---

[5]Tanasi did not append this document to his complaint. And, although the court generally may only consider facts stated in the complaint or "[d]ocuments that are attached to the complaint or incorporated in it by reference," a document not appended to the complaint may be considered if the document is "incorporated [in the complaint] by reference" or is a document "upon which the complaint solely relies and which is integral to the complaint." <u>Roth v. Jennings</u>, 489 F.3d 499, 509 (2d Cir. 2007) (modification omitted). The Agreement, which the Bank submitted for this Court's consideration, is such a document.

SPA-14

(Id.)

Accordingly, the Bank clearly had authority to re-order "checks and other items." But Tanasi argues that "items" are not "debit transactions," and, therefore, the Bank does not have authority under the Agreement to re-order this type of transaction.

Undertaking a plain reading of the Agreement, this Court must agree with Tanasi, as the Agreement itself differentiates between "items," on the one hand, and "debit transactions," on the other.[6]

The example provided in Section Five of the Agreement first demonstrates that the parties considered checks and other items to be similar, but transactions to be different. This example allows the Bank to pay checks from largest to smallest, but "before or after electronic debits." The Agreement therefore suggests that electronic debits are static, and that only checks and "items" can be moved fluidly around them. This is intuitively sensible, since debit transactions occur at a specified time – when the card is used – but checks can be effectively be "paid" at any time.

Section Six makes this distinction more explicit. This section allows the Bank to "pay the item" *or* "allow the transaction." It further provides that the "item may be returned" *or* "the transaction refused without paying it." If the term "item" was meant to refer to debit transactions, as the Bank argues, then there would be no need to make a distinction between "paying items" and "allowing transactions." Instead, it is clear that an item refers to a check or other negotiable instrument – tangible items in the truest sense of that word; things that can be "returned." Instantaneous debit transactions, which occur with a swipe

---

[6]Even Connecticut law appears to make this distinction. See Conn Gen. Stat. § 42a-4-104(A)(9) ("'[I]tem means an instrument or a promise or order to pay money handled by a bank for collection or payment [and] does not include a . . . debit card slip.").

SPA-15

of a card, cannot therefore be considered "items" under the plain terms of the Agreement.

And that makes all the difference, because the Bank reserved the right to pay only "checks or other items" – not transactions – "in any order [it] determine[s]." With respect to debit transactions, the Bank had only two options: allow them or refuse them. But Tanasi alleges that the Bank took neither of these actions, and instead delayed processing debit transactions and re-ordered them in an effort to increase profits. Because the Agreement did not authorize this tactic, the Bank's motion to dismiss Tanasi's breach-of-good-faith-and-fair-dealing claim is denied.

### 2.        Unjust Enrichment & Money Had and Received

The Bank's sole argument against Tanasi's unjust-enrichment and money-had-and-received claims is predicated on the same argument raised immediately above, namely that Tanasi cannot state such a claim because the Agreement authorized the Bank's actions.[7] Because this Court has already found that the Agreement did not authorize debit-transaction re-ordering, the Bank's motion on these claims is also denied.

### 3.        Unconscionability

Tanasi seeks to assert a claim for unconscionability. But this is generally a contract defense, not an independent cause of action. See, e.g., Hottle v. BDO Seidman LLP, 268

---

[7]The Bank initially argued that Connecticut does not recognize a claim for money had and received. But Tanasi pointed to controlling authority that such a claim is indeed recognized, and the Bank abandoned that argument in its reply brief.

The Bank also makes passing reference to the principle of law that generally "an express contract between the parties precludes recognition" of an unjust-enrichment claim. Town of New Hartford v. Conn. Res. Recovery Auth., 291 Conn. 433, 454, 970 A.2d 592, 611 (2009). But "the existence of a contract, in itself, does not preclude equitable relief which is not inconsistent with the contract." Rent–A–PC, Inc. v. Rental Management, Inc., 96 Conn. App. 600, 606, 901 A.2d 720 (2006). Accordingly, without further argument, this Court will not dismiss the unjust-enrichment claim simply because a contract existed between the parties. See Id. at 604–05 ("Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract.").

Conn. 694, 704, 846 A.2d 862, 870 (2004) (contract defenses include fraud, duress, and unconscionability); 8 Williston on Contracts § 18:1 (4th ed. 2013) ("Unconscionable agreements may be said to be voidable or unenforceable by the party imposed upon."). Tanasi has not provided any authority indicating that "unconscionability" is a stand-alone cause of action. Accordingly, this claim is dismissed.

### 4.    Conversion

Tanasi voluntarily withdrew his conversion claim.

## D.    Exclusion of Potential Class Members

Finally, the Bank argues that potential class members, who, unlike Tanasi, continued banking with it after the merger, ought to be excluded from the putative class because those customers signed a class-action waiver. But this case is in the earliest stages of litigation. To date, the Bank has not answered the complaint, no discovery has occurred, and there has been no attempt to certify the class. This Court will therefore defer ruling on this contention until this litigation has progressed further.

## IV. CONCLUSION

In accordance with the clear weight of authority as the law now stands, this Court finds that the Bank's offer of full relief to Tanasi did not moot his class-action complaint. Further, because the Agreement did not authorize the Bank to re-order debit transactions, its motion to dismiss Tanasi's claims for breach of covenant of good faith and fair dealing, money had and received, and unjust enrichment is denied. But because unconscionability is a contract defense, and because Tanasi withdrew his conversion claim, those claims are dismissed.

-16-

SPA-17

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss [11] is GRANTED

in part and DENIED in part.

SO ORDERED.

Dated:      August 26, 2013
            Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court

**SPA-18**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PATRICK TANASI, on behalf of himself and
others similarly situated,

          Plaintiff,

    v.                                 **DECISION & ORDER**
                                        12-CV-646S

NEW ALLIANCE BANK and FIRST
NIAGARA FINANCIAL GROUP, INC.,

          Defendants.

In a motion to dismiss, Defendants argued that their pre-certification Rule 68 offer of judgment to the named plaintiff in this case rendered moot not only his individual claims, but also the entire putative class's claims too. On August 27, 2013, this Court, explaining that the putative class remained viable, issued a Decision and Order denying Defendants' motion to dismiss. (Docket No. 20.)[1] That decision is not typically appealable. But 28 U.S.C. § 1292(b) carves out a narrow exception. Defendants now move for an order certifying an interlocutory appeal under that provision. (Docket No. 21.)

For an order that is otherwise not appealable, the criteria for certification for interlocutory appeal under 28 U.S.C. § 1292(b) are that the district judge "be of the opinion" that (i) the "order involves a controlling question of law as to which there is a substantial ground for difference of opinion," and (ii) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."

Although the Second Circuit has cautioned that in applying these criteria, "only

---

[1]This Court will assume familiarity with the facts of the case and the August 27, 2013 ruling.

'exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of judgment,'" Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Getione Motonave Achille Lauro In Amministrazione Straordinaria, 921 F.2d 21, 25 (2d Cir.1990) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)) (internal brackets omitted), when a ruling satisfies these criteria and "involves a new legal question or is of special consequence," then the district judge "should not hesitate to certify an interlocutory appeal," Balintulo v. Daimler AG, 727 F.3d 174, 186 (2d Cir. 2013) (quoting Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 130 S. Ct. 599, 175 L. Ed. 2d 458 (2009)).

As this Court's August 27, 2013 Decision and Order makes clear, it is a consequential and unresolved question in this Circuit whether a pre-certification offer of judgment under Rule 68 moots a putative class action. District courts in this Circuit, and Circuit courts throughout the county, have offered different answers while employing varied rationales. Moreover, if this question were resolved in Defendants' favor, the case would effectively be concluded; thus, resolution of this matter would clearly "materially advance the ultimate termination of the litigation." Though cognizant of the compelling interests embodied in the "final judgment rule," see, e.g., National Asbestos Workers Medical Fund v. Philip Morris, Inc., 71 F. Supp. 2d 139, 148–52 (E.D.N.Y. 1999), this Court finds certification to be appropriate in this case. Accordingly,

IT HEREBY IS ORDERED , that, under 28 U.S.C. §1292(b) Defendants' Motion for Certificate of Appealability (Docket No. 21) is GRANTED.

FURTHER, the following question is certified for interlocutory appeal:

If, in keeping with Defendants' pre-certification Rule 68 offer of

SPA-20

judgment, which afforded the named Plaintiff complete relief on his individual claims in this putative class action, this Court were to enter judgment in the named Plaintiff's favor, would the entire Rule 23 putative class action be rendered moot?

FURTHER, that this Court's August 27, 2013 Decision and Order is amended in accordance with this Order.

FURTHER, the case is stayed during the pendency of the certification process and any appeal.

SO ORDERED.

Dated:        December 17, 2013
              Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court

-3-